521 S.E.2d 792

**In the Matter of Helen McCORMICK, Magistrate for Lincoln County.**

**No. 23971.**

Supreme Court of Appeals of
West Virginia.

Submitted March 9, 1999.

Decided July 15, 1999.

Charles R. Garten, Esq., Charleston, West Virginia, Attorney for Judicial Investigation Commission.

C. Joseph Stevens, Esq., Stevens & Stevens, Hamlin, West Virginia, Attorney for Magistrate McCormick.

PER CURIAM:

This judicial disciplinary proceeding was initiated against Magistrate Helen McCormick (hereinafter "Magistrate McCormick") of Lincoln County by the Judicial Hearing Board (hereinafter "Hearing Board") after the Judicial Investigation Commission (hereinafter "Commission") filed a consolidated complaint, including complaint numbers 223–96, 231–96 and 232–96, against her on February 10, 1997. In its complaint, the Commission charged Magistrate McCormick with violating Canons 1,[1] 2A,[2] 3A,[3] 3B(2) [4] and (8) [5] of the Code of Judicial Conduct. The Commission alleged that Magistrate McCormick violated the "on call" schedule of Rule 1 of the Administrative Rules for the Magistrate Courts of West Virginia (hereinafter "Rule 1") on three separate occasions.

The Hearing Board held a hearing on June 13, 1997, with regard to these allegations. On October 5, 1998, the Hearing Board filed with this Court its "Recommended Findings of Fact, Conclusions of Law and Proposed Disposition" in which it recommends that the entire complaint against Magistrate McCormick be dismissed. The Hearing Board specifically found in its conclusions of law that

1. Canon 1 of the Code of Judicial Conduct provides that:
     A. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code are to be construed and applied to further that objective.

2. Canon 2A of the Code of Judicial Conduct provides that: "A. A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

3. Canon 3A of the Code of Judicial Conduct provides that: "The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law."

4. Canon 3B(2) of the Code of Judicial Conduct provides that: "A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism."

5. Canon 3B(8) of the Code of Judicial Conduct provides that: "A judge shall dispose of all judicial matters promptly, efficiently, and fairly."

Magistrate McCormick did not violate Rule 1 in any of the three incidents.[6]

## I. *Background Facts*

The Commission's complaint consolidates three separate incidents which occurred in 1996. All three of these incidents occurred during non-regular hours when Magistrate McCormick was on-call pursuant to Rule 1.[7]

### A. Violation of the Protective Order

The first incident, complaint number 223–96, involved an alleged violation of a domestic violence protective order. On November 7, 1996, Magistrate McCormick issued a temporary domestic violence protective order against Mr. A.[8] Three days later, on Sunday, November 10, 1996, Mr. A. allegedly violated that order by coming to the family home where Mrs. A. was living. Mr. A. came to the residence twice that day. The first time, Mrs. A. notified the West Virginia State Police after Mr. A. had already left the resi-dence. Trooper Chapman of the West Virginia State Police issued a BOLO ("Be On the Lookout") for Mr. A. The second time, Mrs. A. called Lincoln County 911 and Trooper Chapman responded. By the time Trooper Chapman arrived at the residence, Mr. A. had again left. Mrs. A. advised Trooper Chapman that Mr. A. had taken the license plate and the insurance from her car so she could not drive the vehicle. Trooper Chapman located Mr. A. later that same evening and arrested him, without a warrant, for violating the protective order.

Trooper Chapman testified before the Hearing Board that after arresting Mr. A., he spoke with Magistrate McCormick on the phone at her home from the State Police detachment. Trooper Chapman testified that Magistrate McCormick advised him that he had to release Mr. A. because there was not sufficient evidence to support a finding that Mr. A. had physically abused Mrs. A.

---

**6.** Although the Hearing Board recommends no punishment be imposed on Magistrate McCormick, it suggests that we change the procedures for prisoners at the regional jails in order that video conferencing may be utilized at the initial appearance stage and also suggests that we amend Rule 1 to require that magistrates be available to respond to situations where a person criminally violates a domestic violence protective order, as is currently done with petitions for such orders. Such requested relief will not be addressed in this opinion. We note, however, that a May 11, 1999, Administrative Order issued by this Court and signed by the Chief Justice provides authority for using video conferencing at the initial appearance stage.

**7.** Rule 1(b) specifically provides as follows:

(b) *On call.*—One magistrate in each county, on a rotating basis, shall be on call at all times other than regular office hours. On-call duties shall extend, in criminal cases, to initial appearances; to taking bond for someone who is in jail; and to receiving and acting upon emergency search warrants, domestic violence matters, and juvenile abuse and neglect matters.

(1) Initial appearances and taking bond in criminal cases.—Within the time periods provided for below, the on-call magistrate shall contact the county or regional jail, whichever applies, and the juvenile detention facility that serves the county, and shall inquire whether any person has been arrested in the county since the close of regular business hours or since the last contact with the jail, or whether anyone confined to the jail is able to post bond. If an arrest has been made or if a prisoner is able to post bond, the magistrate shall proceed immediately to the magistrate court offices to conduct an initial appearance and to set bail for such person, or to accept bond for someone already in jail.

It shall be sufficient to comply with this rule if the on-call magistrate contacts the jail and juvenile detention facility:

(A) Between 10:00 p.m. and 11:00 p.m. Monday through Friday;

(B) Between 10:00 a.m. and 11:00 a.m. and between 10:00 p.m. and 11:00 p.m. on Saturdays and holidays; and

(C) Between 12:00 p.m. and 1:00 p.m. and between 10:00 p.m. and 11:00 p.m. on Sundays.

(2) Emergency search warrants, domestic violence matters, and juvenile abuse and neglect matters.—The on-call magistrate shall be available and responsible for receiving and acting upon applications for emergency search warrants and petitions for domestic violence protective orders. The on-call magistrate shall also respond at any time for the purpose of holding a temporary custody proceeding pursuant to W.Va.Code § 49–6–3(c). When contacted concerning any of these matters, the on-call magistrate shall conduct such emergency action as may be necessary at the magistrate court offices or at any other appropriate location approved for such purpose by the supervising circuit judge.

**8.** As is our practice in cases which involve sensitive facts, we do not use last names to avoid stigmatizing the parties. *See, e.g., State v. George W.H.*, 190 W.Va. 558, 439 S.E.2d 423 (1993); *Nancy Viola R. v. Randolph W.*, 177 W.Va. 710, 356 S.E.2d 464 (1987).

and, pursuant to her advice, he released him. Magistrate McCormick's recollection of this event differs significantly from that of Trooper Chapman. Magistrate McCormick testified that she contacted Trooper Chapman at the State Police detachment after Lincoln County 911 advised her of the situation. Magistrate McCormick testified that she advised Trooper Chapman to read the West Virginia Code and check the guidelines for arresting a person for violating a protective order. She further testified that she advised Trooper Chapman if there was enough evidence he could file a criminal complaint against Mr. A., or Mrs. A. could do so. She testified that she advised Trooper Chapman to contact her if he felt he had enough information for the complaint, but testified that he did not contact her again. The Hearing Board considered and cited both Trooper Chapman's and Magistrate McCormick's testimony regarding the incident in its findings of fact, but found in its conclusions of law that, taking the evidence as a whole, and in consideration of both Magistrate McCormick's and Trooper Chapman's testimony, Trooper Chapman could have arrested Mr. A. and then Magistrate McCormick would have been required to follow the call-in procedure under Rule 1.

B. Issuance of the Protective Order

The second incident, complaint number 231–96, involves a domestic altercation between Shelby M. and her estranged husband, William M., and William's mother, Cheryl M. On Saturday, January 20, 1996, Shelby and her new boyfriend broke into the trailer where William and Cheryl resided, allegedly to retrieve some of her personal belongings. Shelby had moved out of the trailer four days earlier and had returned her keys to the trailer to William. Sergeant Parsons of the West Virginia State Police responded to this complaint at approximately 7:30 a.m. At that time, the dispatcher advised him that there had been another altercation between these same individuals. Earlier that morning, Cheryl and William had gone to the J. residence, where Shelby was now residing, allegedly to retrieve some of William's personal belongings and to obtain custody of Shelby's and William's son. An argument then ensued between these two families and one of the members of the J. family, the brother of Shelby's alleged boyfriend, broke Cheryl's windshield with a piece of ice.

Sergeant Parsons testified before the Hearing Board that he advised William and Cheryl they needed to obtain a domestic violence protective order from the magistrate to prevent Shelby and her boyfriend from coming back to their residence. He testified that he explained to them that William would have to file for divorce in order to resolve the custody and property issues. Sergeant Parsons testified that he then went to the J. residence and took a similar complaint. He also advised the J. family and Shelby that they would need to contact the magistrate for a protective order.

Magistrate McCormick testified that she spoke with Cheryl M. on January 20, 1996. She testified that Cheryl only stated that William wanted to obtain custody of his son and William wanted his personal property back from Shelby and that no acts of domestic violence were alleged by Cheryl. Magistrate McCormick testified that she advised Cheryl these allegations would not support an issuance of a protective order and these issues would have to be resolved in a divorce proceeding. She further testified that Cheryl advised her that they would not be coming to the courthouse until the following Monday.

Cheryl M. testified before the Hearing Board that she and William wanted a protective order to keep Shelby away from their residence. She testified that during her telephone conversation with Magistrate McCormick, she was advised that if they did come in on that Saturday, the order would probably not be served by the police until Monday. Interestingly, the record indicates that on Monday, January 22, 1996, after William and his mother came to magistrate court, Magistrate McCormick issued William M. a temporary protective order against Shelby M. Magistrate McCormick testified that she did so at that time because William changed his story and alleged that Shelby hit him during the altercation on January 20, 1996. The Hearing Board credited Magistrate McCormick's testimony and found in its conclusions

of law that Cheryl M. only advised Magistrate McCormick that her son wanted custody of his child and wanted to obtain possession of his personal items, and that such "requests would not initiate a Domestic Violence Petition and, thus, Magistrate McCormick advised [Cheryl M.] to advise her son to pursue other remedies through the Courts."

### C. Initial Appearance of William A. ·

The third incident, complaint number 232–96, involves the arrest of William A. on Saturday, January 20, 1996, for the battery of his mother. Sergeant Parsons and Trooper Chapman responded to a call at approximately 11:00 a.m. from Lincoln County 911 that there was a domestic altercation in progress at the A. residence. They responded, finding that William had been beating his mother and his mother wanted him prosecuted. William was arrested for battery. Sergeant Parsons testified before the Hearing Board that he then transported William to the Lincoln County Courthouse, under the belief that Magistrate McCormick would be in the office for a protective order hearing for Cheryl and William M. Sergeant Parson testified that he contacted Magistrate McCormick at home and she informed him that she was not coming to the courthouse and advised him to take William to the South Central Regional Jail,[9] which he did. Sergeant Parsons testified that William was not transported to the Lincoln County Courthouse for his initial appearance until the following day, January 21, 1996, after 2:00 p.m. He further testified that State Police records indicated that officers were available on the evening of January 20, 1996, to transport William.

Magistrate McCormick testified before the Hearing Board that she came to the courthouse for William's initial appearance as soon as she was able to obtain an officer to transport William to and from the South Central Regional Jail. The Lincoln County 911 records indicate that Magistrate McCormick contacted 911 to determine if an officer was available to transport the prisoner at approximately 9:00 p.m. on January 20, 1996, and 11:31 a.m., 1:15 p.m. and 3:39 p.m. on January 21, 1996. The Hearing Board credited Magistrate McCormick's testimony and found that she could not locate a state police officer to transport the prisoner to the magistrate court for his initial appearance. The Hearing Board's recommendation seems to suggest that it is the magistrate's duty to arrange this transportation but as we explain below, arranging such transportation is not the duty of the magistrate, even in situations such as in Lincoln County, where there is no county jail and the prisoners must be transported from a regional jail.

### II. *Standard of Review*

■ In cases in which this Court is asked to discipline judicial officers, we independently review the record to determine if the findings of fact and recommendations of the Hearing Board are appropriate. As we stated in syllabus point one of *In re Browning*, 192 W.Va. 231, 452 S.E.2d 34 (1994), " '[t]he Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.' Syllabus Point 1, *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980)." [10]

Pursuant to Rule 4.5 of the West Virginia Rules of Judicial Disciplinary Procedure, the burden of proof to be applied in judicial

---

9. Lincoln County does not have its own jail and must use the South Central Regional Jail outside of Charleston for its prisoners. During weekends and after-business hours, the standard procedure is for the police officers in Lincoln County to transport their prisoners to the South Central Regional Jail, which is an approximate forty-five (45) minute drive, one way. According to the "on call" schedule found in Rule 1, the magistrate on duty calls the Regional Jail at the appointed times to determine if any prisoners from Lincoln County need to make an initial appearance. If there are prisoners, the magistrate then will contact Lincoln County 911 to determine if any police officers are available to transport prisoners for their initial appearance. If an officer is available to transport the prisoner, the magistrate will come to the courthouse for the initial appearance.

10. Pursuant to Rule 4.8 of the West Virginia Rules of Disciplinary Procedure, the recommended decision of the Hearing Board "shall contain findings of fact, conclusions of law, and a recommended disposition." We urge the Hearing Board to make thorough and detailed findings of fact in such recommended decisions.

disciplinary proceedings is that the allegations of the formal charge must be proved by clear and convincing evidence in order to recommend the imposition of discipline on any judge.[11] Therefore, this Court must review both the record and the law in this case de novo and determine if clear and convincing evidence exists to prove the allegations in the complaint against Magistrate McCormick.

■ In accordance with the directives found in *Browning,* we do note, however, that substantial consideration should be given to the Hearing Board's findings of fact. "This consideration does not mean that this Court is foreclosed from making an independent assessment of the record, but it does mean that absent a showing of some mistake or arbitrary assessment, findings of fact are to be given substantial weight." 192 W.Va. at 234, n. 4, 452 S.E.2d at 37, n. 4.

### III. *Discussion*

The Commission contends that Magistrate McCormick violated Canons 1, 2A, 3A, 3B(2) and (8) of the Code of Judicial Conduct because she violated Rule 1 in the three above-described incidents.

### A. Violation of the Protective Order

■ With regard to the first incident found in complaint number 223–96, we agree with the Hearing Board that the Commission did not prove by clear and convincing evidence that Magistrate McCormick violated Rule 1. On November 10, 1996, Trooper Chapman arrested Mr. A., without a warrant, for violating the protective order issued three days earlier. The facts in the record are in dispute regarding the conversation between Trooper Chapman and Magistrate McCormick. Although Trooper Chapman testified that Magistrate McCormick advised him to

release Mr. A., Magistrate McCormick denied such charge and thus, we are unable to find clear and convincing evidence to support this allegation.[12] Thus, it is clear that Magistrate McCormick was under no obligation to come immediately to the Lincoln County Courthouse in this situation.

Furthermore, law enforcement officers should seek legal advice and direction from the prosecutor, who is under the duty to attend to the criminal business of the county, rather than from the magistrate who should not give legal advice to law enforcement officers. *See* W.Va.Code § 7–4–1 (1993) (enunciating list of duties of prosecuting attorney); *State v. Walters,* 186 W.Va. 169, 172, 411 S.E.2d 688, 691 (1991) (holding that "a magistrate or other magistrate court personnel should *not* furnish legal *advice* to a party to a proceeding in magistrate court").

Pursuant to West Virginia Code § 48–2A–10b (1998), when a respondent to a domestic violence protective order violates such order, the petitioner may file a criminal complaint. "If the court finds probable cause upon the complaint, the court shall issue a warrant for arrest of the person charged." W.Va.Code § 48–2A–10b(b). Pursuant to West Virginia Code §§ 48–2A–10c (1998) and 48–2A–14 (1998), a law enforcement officer is required to arrest a person for violating a domestic violence protective order without an arrest warrant in certain situations.[13]

West Virginia Code § 48–2A–10c(d) provides that when there is such a warrantless arrest, "the officer shall take the arrested person before a court or a magistrate and, upon a finding of probable cause to believe a violation of an order as set forth in this section has occurred, the court or magistrate shall set a time and place for a hearing in accordance with the West Virginia rules of

---

**11.** The West Virginia Rules of Judicial Disciplinary Procedure superseded the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters, effective July 1, 1994. We have previously held under the old rules in syllabus point 4 of *In re Pauley,* 173 W.Va. 228, 314 S.E.2d 391 (1983), that "[u]nder Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceed-

ing 'must be proved by clear and convincing evidence.' "

**12.** However, if clear and convincing evidence existed to support this charge, a violation of the Code of Judicial Conduct would exist.

**13.** This opinion does not address whether or not Trooper Chapman properly followed pertinent statutory provisions in arresting Mr. A.

criminal procedure." West Virginia Code § 48–2A–14(c) provides that when there is such an arrest, "the arrested person shall be taken before a magistrate within the county in which the offense charged is alleged to have been committed in a manner consistent with the provisions of Rule 1 of the Administrative Rules for the Magistrate Courts of West Virginia." [14]

West Virginia Code §§ 48–2A–10b, 48–2A–10c, and 48–2A–14 contemplate a procedure wherein a law enforcement officer will arrest the person who violates a protective order, either without a warrant where appropriate or on the basis of a criminal complaint filed by the petitioner or a law enforcement officer, and once that person is arrested, the arrest is to be handled in the same manner as any other arrest. If the arrest occurred during regular business hours, the magistrate would perform the probable cause hearing or the initial appearance as soon as the arrestee is brought before the magistrate. If the arrest occurred during non-regular hours, the "on call" magistrate would respond to the arrest in the manner prescribed under Rule 1. Rule 1 does not contain a provision which would require a magistrate to respond differently to an arrest for a violation of a domestic violence protective order. Similarly, a law enforcement officer should treat one arrested for a violation of a protective order the same as any other arrestee.

Accordingly, as found by the Hearing Board, had Trooper Chapman arrested Mr. A. and taken him to the South Central Regional Jail, Magistrate McCormick would have been legally obligated to follow the "on call" schedule and conduct either a probable cause hearing or an initial appearance after the prisoner was transported to the courthouse. Because Trooper Chapman did not follow through with the arrest of Mr. A., Magistrate McCormick's responsibilities under Rule 1 were not triggered, and thus a violation of neither Rule 1 nor the Code of Judicial Conduct has been proven by clear and convincing evidence. Therefore, we agree with the Hearing Board and dismiss number 223–96 of the Commission's complaint.

■ We make it abundantly clear that it is not the magistrate's duty to arrange for transportation of a prisoner, as the Hearing Board's recommended decision implies. West Virginia Code § 31–20–5(v) (1996 and Supp.1998) provides that the state regional jail authority "shall provide for the transportation of inmates between the regional jails and local holding facilities for court appearances." Thus, law enforcement and not the magistrate is responsible for making prisoner transport arrangements. A magistrate in counties such as Lincoln County, which have no jail of their own and must use the regional jail, may call the regional jail to determine if there are prisoners in the regional jail awaiting transportation to the courthouse and if an officer is available to transport the prisoners. The magistrate must report to magistrate court to accept the filing of criminal complaints, conduct an initial appearance proceeding or accept bond for someone detained at the regional jail, but she is not required to make the transportation arrangements herself. However, if the magistrate determines that a law enforcement officer is available for transport purposes, she can direct that officer to bring the prisoner to the courthouse.

### B. Issuance of the Protective Order

■ With regard to the second incident, complaint number 231–96, we do not agree with the recommendation of the Hearing Board. Magistrate McCormick clearly violated Rule 1 when she deterred William and Cheryl M. from coming to the Lincoln County Courthouse to procure a protective order on that Saturday.[15] Although the Hearing Board's findings of fact credit Magistrate McCormick's testimony regarding this incident, such findings cannot support a conclusion that Magistrate McCormick did not violate Rule 1. Once Magistrate McCormick was

---

**14.** We also note that pursuant to Rule 3 of the West Virginia Rules of Criminal Procedure "a law enforcement officer showing reason to have reliable information and belief" may file a criminal complaint.

**15.** By deterring William and Cheryl M. from coming to the courthouse, she effectively refused to come to the courthouse.

informed by Cheryl and William M. that they wanted to file a domestic violence petition, she should have immediately gone to the courthouse to have a hearing on that petition.

The Hearing Board's conclusion of law that William and Cheryl M's "requests would not initiate a Domestic Violence Petition and, thus, Magistrate McCormick advised [Cheryl M.] to advise her son to pursue other remedies through the Courts[,]" was clearly in error because Magistrate McCormick had a duty under Rule 1 to come to the courthouse to respond to a petition for domestic violence, to hear evidence presented, and then form a conclusion. It was not proper for Magistrate McCormick to decide whether to issue the order before the petition was even filed.

■ Rule 1 specifically provides that "[t]he on-call magistrate shall be available and responsible for receiving and acting upon applications for emergency search warrants and petitions for domestic violence protective orders." West Virginia Code § 48–2A–4(a) (1998) also provides that "[n]o person shall be refused the right to file a petition [for a domestic violence protective order] under the provisions of this article." An "on call" magistrate must come to the courthouse whenever a person desires to file a petition for a domestic violence protective order. Further, an "on call" magistrate should not screen the situation over the telephone before deciding whether or not to come to the courthouse.

Although the facts are in dispute, the testimony of Sergeant Parsons and Cheryl M. provides clear and convincing evidence that Cheryl and William M. were advised by Sergeant Parsons that they could file a petition for a protective order to keep William's estranged wife, Shelby, away from their residence and that they, in fact, intended to come to the courthouse to file such a petition. Cheryl M.'s testimony demonstrates that Magistrate McCormick deterred Cheryl and William from filing the domestic violence petition on that Saturday by telling them that the protective order would not even be served until the next Monday. Magistrate McCormick inappropriately screened this situation and may have held substantive ex-parte communications with one party during the limited telephone conversation between herself and Cheryl. The failure of the magistrate to report to the courthouse as required by Rule 1 denied William and Cheryl the statutory right pursuant to West Virginia Code § 48–2A–4(a) to immediately file a petition for a protective order.

Furthermore, custody of minor children can be determined by the magistrate in a temporary domestic violence order. Magistrate McCormick's arguments imply that a petitioner cannot use a temporary domestic violence petition simply for the purposes of custody determinations. West Virginia Code § 48–2A–5(a) (1998) provides that "the court may enter such temporary orders as it may deem necessary to protect the petitioner or minor children from domestic or family violence...." However, there must be "clear and convincing evidence of immediate and present danger of abuse to the petitioner or minor children" to constitute good cause for issuing an ex-parte custody determination in the temporary order. *Id.*

After reviewing the record, we find that Magistrate McCormick violated Canon 1 and Canon 2A of the Code of Judicial Conduct by deterring William and Cheryl M. from coming to the Lincoln County Courthouse on a Saturday to file a petition for a protective order, rather than coming immediately to the courthouse to respond as required by Rule 1(b)(2). Canon 1 provides, in pertinent part, that "[a]n independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved." To further this objective, Canon 2A states, in pertinent part, that a judge "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Clear and convincing evidence exists that Magistrate McCormick deterred William and Cheryl M. from filing a petition for a protective order against Shelby M. The record clearly demonstrates that Magistrate McCormick issued a protective order against Shelby the following Monday, which further supports our finding that she improperly delayed the filing of the petition.

■ Although Magistrate McCormick disputes the testimony of Cheryl M. regarding the telephone conversation between the two, and argues in her brief that the facts would not have permitted the issuance of a domestic violence protective order, a magistrate should not decide issues before any matter is filed and pending before the court and should err on the side of caution in situations involving domestic violence. "Domestic violence cases are among those that our courts must give priority status. In W.Va.Code, 48–2A–1, *et seq.*, the West Virginia Legislature took steps to ensure that these cases are handled both effectively and efficiently by law enforcement agencies and the judicial system." Syl. Pt. 6, *In re Browning,* 192 W.Va. at 232, 452 S.E.2d at 35. One of the purposes of Article 2A of Chapter 48 is "[t]o create a speedy remedy to discourage violence against family or household members with whom the perpetrator of domestic or family violence has continuing contact." W.Va.Code § 48–2A–1(b)(2) (1998). Pursuant to West Virginia Code § 48–2A–4(a), "[n]o person shall be denied relief under the provisions of this article if she or he presents facts sufficient under the provisions of this article for the relief sought."

As we explained in *Browning,* "[t]he magistrate court system is a critical link in the process of filing petitions and issuing protective orders in domestic violence cases. Frequently, a magistrate may be an abuse victim's first contact with the judicial system." 192 W.Va. at 238, 452 S.E.2d at 41. Accordingly, our independent evaluation reveals that Magistrate McCormick was under a duty to respond to William and Cheryl M.'s request to file a petition for a domestic violence protective order. By prematurely screening the facts and then deterring William and Cheryl M. from filing a petition for a protective order on that Saturday, Magistrate McCormick was in total disregard of her duty to uphold the public's confidence and the integrity of the judiciary. Therefore, we find that Magistrate McCormick's actions violated the Code of Judicial Conduct and we impose a public reprimand [16] as a sanction for her violation.

### C. Initial Appearance of William A.

■ With regard to the final incident, complaint number 232–96, we agree with the recommendation of the Hearing Board, although Magistrate McCormick technically violated Rule 1 when she failed to call Lincoln County 911 during the mandated hours to determine if William A. was being transported for his initial appearance. Because the record demonstrates that Magistrate McCormick did, however, in good faith, attempt to determine if she needed to report to her office for the initial appearance of William A., we concur with the recommendation of the Hearing Board that this portion of the Commission's complaint should be dismissed.

Sergeant Parsons testified that William A. was arrested at approximately 12:30 p.m. on Saturday, January 20, 1996, and Magistrate McCormick did not conduct his initial appearance until after 2:00 p.m. on the next day, Sunday, January 21, 1996. Rule 1 provides that the "on call" magistrate must contact the jail between 10:00 a.m. and 11:00 a.m. and between 10:00 p.m. and 11:00 p.m. on Saturdays and between 12:00 p.m. and 1:00 p.m. and between 10:00 p.m. and 11:00 p.m. on Sundays to determine if arrests have occurred since the last call-in time and if there is a need to report to the magistrate court for an initial appearance proceeding or to accept bond. Magistrate McCormick was already aware that William A. had been arrested. The Lincoln County 911 records which were offered as evidence before the Hearing Board demonstrate that Magistrate McCormick contacted 911 at approximately 9:00 p.m. on January 20, 1996, and 11:31 a.m.,

---

**16.** Rule 4.12 of the West Virginia Rules of Judicial Disciplinary Procedure provides that this Court may impose any of the following sanctions for a violation of the Code of Judicial Conduct: "(1) admonishment; (2) reprimand; (3) censure; (4) suspension without pay for up to one year; (5) a fine of up to $5,000; or (6) involuntary retirement for a judge because of advancing years and attendant physical or mental incapaci-

ty...." Rule 4.12 explains that "[a] reprimand constitutes a severe reproof to a judge who has engaged in conduct which violated the Code of Judicial Conduct." Because we place such priority and importance on domestic violence cases, we believe that this is the appropriate sanction. Furthermore, we have issued the same sanction in cases involving similar circumstances. *See Browning,* 192 W.Va. at 239, 452 S.E.2d at 42.

1:15 p.m. and 3:39 p.m. on January 21, 1996, and thereby fulfilled her duties under Rule 1. As explained earlier, the actual transportation arrangement is a law enforcement function, however, the magistrate can direct that a prisoner be brought to the magistrate court. Accordingly, we agree with the Hearing Board's recommendation that number 232–96 of the Commission's complaint should be dismissed.

We note that before 1990, magistrates in all counties were required to be on duty twenty-four hours a day. This Court amended Rule 1, effective January 1, 1990, to create the current "on call" schedule that is at issue. Some concern has been expressed that the modification of Rule 1 creates a danger that some individuals taken into custody may be unjustly or unfairly detained for longer than they should while waiting for a magistrate to call in pursuant to the on-call schedule. Thus, this is an opportunity for this Court to state that magistrates must follow the "on call" schedule in Rule 1 scrupulously. Should it appear that magistrates are failing to comport strictly with the "on call" rule, this Court might well entertain a return to twenty-four hour a day duty for magistrates.

### IV. *Conclusion*

Based upon the foregoing, we agree with the recommendations of the Judicial Hearing Board and dismiss numbers 223–96 and 232–96 of the Commission's complaint regarding Mr. A.'s violation of the temporary domestic violence protective order and the initial appearance of William A. However, because we find that Magistrate McCormick did not follow the mandates of Rule 1 of the Administrative Rules for Magistrate Courts of West Virginia, we conclude that she violated Canons 1 and 2A of the Code of Judicial Conduct by improperly delaying the filing of a domestic violence protective order by screening the facts through an inappropriate ex-parte communication and by deterring William and Cheryl M. from coming to the Lincoln County Courthouse on a Saturday to file a petition for a domestic violence protective order, as alleged in complaint number 231–96. Accordingly, we issue a public reprimand against Magistrate McCormick for such conduct.

Dismissed, in part, and public reprimand.