541 S.E.2d 563

H. John ROGERS, Who Sues on His Own Behalf and on Behalf of All Others Similarly Situated, Plaintiff Below,

v.

James M. ALBERT, Who is Sued in His Official Capacity as Administrative Director of the Supreme Court of Appeals of the State of West Virginia; the Honorable David M. Buzzard, the Honorable Mark A. Kerwood and the Honorable William D. Anderson, All of Whom are Sued in Their Official Capacities as Magistrates of the Magistrate Court of Marshall County, West Virginia; and John Doe, Nos. 1–3 Inclusive; and Jane Doe, Nos. 1 and 2, Defendants Below.

No. 27680.

Supreme Court of Appeals of West Virginia.

Submitted  Sept. 19, 2000.

Decided  Dec. 13, 2000.

H. John Rogers, Esq., New Martinsville, Pro Se.

John M. Hedges, Esq., Byrne & Hedges, Morgantown, for Appellee.

PER CURIAM:

This case comes to the Court on certified question from the Circuit Court of Marshall County, and presents the following issue: "Is Rule 1(b), as amended, of the Administrative Rules for the Magistrate Courts of West Virginia constitutional?" Plaintiff below, H. John Rogers, argues that Rule 1(b)(1), which sets forth certain minimum standards governing the availability of magistrates to conduct initial appearance and bail proceedings outside of normal office hours, is facially unconstitutional because it potentially denies individuals who are arrested without a warrant an opportunity to promptly appear before a magistrate. The circuit court answered the certified question in the affirmative, and we likewise conclude that Rule 1(b)(1) conforms to constitutional requirements.

## I.

### BACKGROUND

Rogers was stopped on suspicion of driving under the influence on Friday, February 17,

1995, and was placed under arrest for obstructing an officer at approximately 11:25 p.m. that same evening. Rogers was then taken to the Northern Regional Jail, where he arrived some two hours later, at 1:26 a.m. on Saturday. Because a magistrate was not immediately available, Rogers' initial appearance did not take place until approximately 7 a.m. the following morning. It is undisputed that the requirements of Rule 1(b)(1) were satisfied. Rogers was later acquitted of charges stemming from this incident.

Rogers subsequently initiated the present civil action, seeking, *inter alia*,[1] declaratory and injunctive relief alleging that he had been deprived of his constitutional right to a prompt initial appearance before a magistrate following a warrantless arrest.[2] The circuit court certified the present question to this Court, finding that the time standards of Rule 1(b)(1) are constitutional.

## II.

### STANDARD OF REVIEW

■ As this Court stated in syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." *See A & M Properties, Inc. v. Norfolk Southern Corp.*, 203 W.Va. 189, 191, 506 S.E.2d 632, 634 (1998); *King v. Lens Creek Ltd. Partnership*, 199 W.Va. 136, 140, 483 S.E.2d 265, 269 (1996).

## III.

### DISCUSSION

Rule 1(b) of the Administrative Rules for the Magistrate Courts of West Virginia was promulgated by this Court in substantially its present form in December 1989,[3] and estab-

---

1. The complaint also asserted that Rogers had been falsely arrested by officers of the Marshall County Sheriff's Office; however, this claim has since been voluntarily dismissed.

2. Based apparently upon the premise that the present case involves a purely legal issue, the parties have not designate any portion of the

record below for submission pursuant to W. Va. R.App. P. 13(c). Consequently, our understanding of plaintiff's claims is limited to the arguments set forth in the parties' briefs.

3. In its present form, Rule 1(b) provides:

(b) On Call. One magistrate in each county, on a rotating basis, shall be on call at all times

lishes minimum standards regarding when magistrates must be available outside of normal office hours to hear certain matters requiring expedited proceedings. Rule 1(b) requires that one magistrate in each county, on a rotating basis, be on call at all times during nighttime and weekend hours. Subparagraph (1) of this rule, the provision at issue in this case, further directs that the on-call magistrate must contact the jail and juvenile detention facilities serving the county at regular intervals to ascertain whether anyone has been recently arrested, or whether someone already confined to jail has become able to post bond.[4] The rule states in mandatory language that "[i]f an arrest has been made or if a prisoner is able to post bond, the magistrate *shall proceed immediately* to the magistrate court offices to conduct an initial appearance and to set bail for such person, or to accept bond for someone already in jail." Rule 1(b)(1) (emphasis added). As we recently admonished, "magistrates must follow the 'on call' schedule in Rule 1 scrupulously." *In re McCormick,* 206 W.Va. 69, 78, 521 S.E.2d 792, 801 (1999).

Plaintiff Rogers argues that Rule 1(b)(1) is constitutionally deficient, in that it implicitly sanctions "gaps" in magistrate availability of up to fifteen hours in duration.[5] More specifically, he asserts that this Court's decision in *State ex rel. Harper v. Zegeer,* 170 W.Va. 743, 296 S.E.2d 873 (1982), compels that we employ our rule-making[6] and supervisory[7] authority so as to impose a system of magistrate availability which insures that arrested persons are afforded an immediate initial appearance before a neutral judicial officer.

---

other than regular office hours. On-call duties shall extend, in criminal cases, to initial appearances; to taking bond for someone who is in jail; and to receiving and acting upon emergency search warrants, domestic violence matters, and juvenile abuse and neglect matters.

(1) Initial Appearances and Taking Bond in Criminal Cases. Within the time periods provided for below, the on-call magistrate shall contact the county or regional jail, whichever applies, and the juvenile detention facility that serves the county, and shall inquire whether any person has been arrested in the county since the close of regular business hours or since the last contact with the jail, or whether anyone confined to the jail is able to post bond. If an arrest has been made or if a prisoner is able to post bond, the magistrate shall proceed immediately to the magistrate court offices to conduct an initial appearance and to set bail for such person, or to accept bond for someone already in jail.

*It shall be sufficient to comply with this rule* if the on-call magistrate contacts the jail and juvenile detention facility:

(A) Between 10:00 p.m. and 11:00 p.m. Monday through Friday;

(B) Between 10:00 a.m. and 11:00 a.m. and between 10:00 p.m. and 11:00 p.m. on Saturdays and holidays; and

(C) Between 12:00 p.m. and 1:00 p.m. and between 10:00 p.m. and 11:00 p.m. on Sundays.

(2) Emergency Search Warrants, Domestic Violence Matters, and Juvenile Abuse and Neglect Matters. The on-call magistrate shall be available and responsible for receiving and acting upon applications for emergency search warrants and petitions for domestic violence protective orders. The on-call magistrate shall also respond at any time for the purpose of holding a temporary custody proceeding pursuant to W. Va.Code § 49–6–3(c). When con-

tacted concerning any of these matters, the on-call magistrate shall conduct such emergency action as may be necessary at the magistrate court offices or at any other appropriate location approved for such purpose by the supervising circuit judge.

(Emphasis added.)

4. In contrast, subparagraph (2) of Rule 1(b) requires that the on-call magistrate be available round the clock to hear requests for emergency search warrants, petitions for domestic violence protective orders, and petitions for temporary custody in child abuse and neglect matters. When contacted regarding any of these matters, an on-call magistrate must always report immediately to the magistrate court offices to conduct related proceedings.

5. For example, a magistrate could call the jail at precisely 10:00 p.m. on Saturday evening, and, after being informed that no one had been arrested or become capable of posting bond, not contact the jail again until 1:00 p.m. on Sunday. Under this scenario, a person who is arrested or becomes able to post bond during the intervening period could be forced to wait more than fifteen hours before having access to the on-call magistrate.

6. *See* W. Va. Const. art. VIII, § 3, para. 3 ("The court shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all the courts of the State relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law.").

7. *See* W. Va. Const. art. VIII, § 3, para. 4, cl. 1 ("The [Supreme Court of Appeals] shall have general supervisory control over all intermediate courts, circuit courts and magistrate courts.").

In other words, Rogers contends that the constitutional and statutory right to prompt presentment necessitates that magistrates be available round the clock to conduct initial appearances. Although we are sensitive to the concerns expressed by the plaintiff in this case, we do not discern from *Harper*, or any of the other authority cited by Rogers, a constitutional imperative to abandon the scheme set forth in Rule 1(b)(1).

In *Harper*, the Court was confronted with the question of whether the criminal punishment of chronic alcoholics for public intoxication violated the constitutional prohibition against cruel and unusual punishment contained in Article III, § 5 of the West Virginia Constitution. The *Harper* Court, in its initial opinion granting habeas corpus relief, held that while "[t]he State has a legitimate right to get [chronic alcoholics] off the streets or out of whatever public area in which they might be gamboling," the criminal punishment of such persons was nevertheless unconstitutional. 170 W.Va. at 749, 296 S.E.2d at 878. On rehearing, the Court in *Harper* was subsequently asked by the petitioner to "detail minimum constitutional requirements for jailing those arrested for public intoxication." *Harper*, 170 W.Va. at 752, 296 S.E.2d at 881. In broadly outlining existing procedures bearing upon the arrest and detention of alcoholics for public intoxication, the Court, in an addendum to its original opinion, spoke to the constitutional and statutory requirement of prompt presentment:

> Presentment before a judicial officer before incarceration on a criminal charge is basic to due process. It has been a fundamental principle of English law since the affirmation of the Magna Carta by King John in 1215 that no freeman shall be imprisoned except as prescribed by the law of the land. The Magna Carta, which was confirmed some thirty times during the Middle Ages, 2 W. Holdsworth, *A History of English Law* at 219 (7th ed.1956), is but of historical interest, but the constitutions of the United States and West Virginia and the fundamental concept of due process is the law under which we live today. U.S. Const. amend. V; W. Va. Const. art. 3, § 10. Also recognized in our organic law is the requirement of probable cause prior to the seizure of persons. U.S. Const. amend. IV; W. Va. Const. art. 3, § 6.
>
> The Legislature, elaborating upon these guarantees of due process, enacted a statute in 1965 which requires that all executive law enforcement officers "making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a [magistrate] of the county in which the arrest is made." (Emphasis added). W. Va.Code § 62–1–5. In *State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978), we held that this statutory provision is mandatory. The requirement of prompt presentment after arrest for a judicial determination of probable cause is also mandated by Rule 5(a) of our Rules of Criminal Procedure, which provides that: "an officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person *without unnecessary delay* before a magistrate within the county where the arrest is made." (Emphasis added). Thus, it is the law of West Virginia that no person may be imprisoned or incarcerated prior to presentment before a judicial officer and the issuance of a proper commitment order. The disposition of persons accused of crime is prescribed by law, not by the caprice of executive and judicial authorities.

*Id.* at 753, 296 S.E.2d at 883 (footnote omitted).

■ As we indicated in *Harper*, a variety of constitutional and statutory rights are vindicated by an initial appearance before a neutral judicial officer. The most immediate constitutional interest protected by a prompt initial appearance is the prohibition against unreasonable searches and seizures, provided by the Fourth Amendment to the United States Constitution, and Article III, § 6 of the West Virginia Constitution, which in this context requires that persons arrested without a warrant be promptly presented to a magistrate for a determination of probable cause prior to any extended period of incar-

ceration. *See Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975) (holding that Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest); *see also State v. Persinger*, 169 W.Va. 121, 134–35 & n. 12, 286 S.E.2d 261, 269–70 & n. 12 (1982).

A prompt initial appearance is likewise required under W. Va.Code § 62–1–5 (1997) and West Virginia Rule of Criminal Procedure 5(a), both of which demand that an arrestee be brought before a judicial officer "without unnecessary delay." As this Court has observed, the purpose of these rules of procedure is "to ensure that the police do not use the delay to extract a confession from a defendant through prolonged interrogation." *State v. Hutcheson*, 177 W.Va. 391, 394, 352 S.E.2d 143, 146 (1986); *see also State v. Whitt*, 184 W.Va. 340, 345, 400 S.E.2d 584, 589 (1990). Both § 62–1–5 and Rule 5(a) are analogues of Federal Rule of Criminal Procedure 5(a), which the United States Supreme Court interpreted in *Mallory v. United States*, 354 U.S. 449, 455, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479 (1957), to prohibit delay that would "give opportunity for the extraction of a confession." [8] The Supreme Court has made clear that neither Federal Rule 5(a) nor the exclusionary rules underpinning it are constitutionally required. *See Gallegos v. Nebraska*, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86 (1951).

Rogers argues that *Harper* equated the right to prompt presentment with the constitutional right to due process set forth in Article III, § 10 of the West Virginia Constitution, based upon the statement that "[p]resentment before a judicial officer before incarceration on a criminal charge is basic to due process." [9] 170 W.Va. at 753, 296 S.E.2d at 883. In the present context, however, due process does not extend any further than the constitutional right to avoid unreasonable seizure. As the United States Supreme Court stated in *Gerstein*, "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54; *see Baker v. McCollan*, 443 U.S. 137, 142–46, 99 S.Ct. 2689, 2693–96, 61 L.Ed.2d 433 (1979) (determination of probable cause by detached judicial officer that complies with Fourth Amendment is all of the process that is due in order to constitutionally detain an accused pending trial); *cf. Taylor v. Waters*, 81 F.3d 429, 435–36 (4th Cir.1996) (same). As we suggested in *State v. Persinger*, the right to prompt presentment is not constitutionally guaranteed outside the context of a warrantless arrest, but rather exists as a statutory and procedural right. 169 W.Va. at 134–35, 286 S.E.2d at

**8.** Section 62–1–5 was drafted in 1965 by a committee representing the West Virginia Bar. The drafters indicated in their report to the Legislature that the statute was intended to conform to Federal Rule 5(a) and its goal of stamping out the use of prolonged interrogation as a means of coercing confessions:

> In conformity with Federal Rule 5(a) this section will require the officer to take the arrested person before a justice without unnecessary delay. It should put an end to the federally condemned practice of holding an accused incommunicado for the purpose of obtaining (i.e., extracting) a confession before taking him before a magistrate.

*Quoted in* 51 Op. W. Va. Att'y Gen. 731, 734 (1966).

**9.** We note at this juncture that the addendum affixed to the *Harper* opinion following rehearing is dicta, since the Court on rehearing did not undertake to decide any legal issue arising from the case before it. Rather, the addendum was aimed at precisely what we said it was: "outlining the procedures which currently exist" pertaining to the arrest and detention of alcoholics for public intoxication. *Id.* at 757, 296 S.E.2d at 887. "[W]e do not intend to suggest that they are convenient, adequate, efficient, or that they meet the standards set forth in the initial opinion. The procedures we have outlined are minimum statutory requirements now mandated by the Legislature." *Id.* As dicta, the quoted language from *Harper* clearly has no *stare decisis* or binding effect upon this Court. *See In re Kanawha Valley Bank*, 144 W.Va. 346, 383, 109 S.E.2d 649, 669 (1959) ("Obiter dicta or strong expressions in an opinion, where such language was not necessary to a decision of the case, will not establish a precedent.") (citations omitted).

269–70.[10]

Thus, since in this case we are faced with the question of whether Rule 1(b)(1) is constitutional, we are left to determine whether the rule comports with the requirement of a prompt judicial determination of probable cause following a warrantless arrest. Rogers points to this Court's statement in *Harper* that "it is the law of West Virginia that no person may be imprisoned or incarcerated prior to presentment before a judicial officer and the issuance of a proper commitment order," 170 W.Va. at 749, 296 S.E.2d at 878, and reasons that it effectively precludes *any* post-arrest delay not occasioned by either transport or completion of the administrative steps incident to arrest. We do not read *Harper* so broadly. Rather than prohibiting any detention prior to presentment before a magistrate, we interpret *Harper* as merely expressing the longstanding common-law rule that an arrestee may not be held in custody for an unreasonable period of time prior to being afforded an appearance before a neutral judicial officer. *See Haney v. Town of Rainelle*, 125 W.Va. 397, 404, 25 S.E.2d 207, 211 (1943) (after an arrest, " 'the prisoner may be confined in the most suitable place, *for a reasonable time*, until it is possible for him to be taken before a magistrate' ") (emphasis added and citation omitted). Indeed, the only authority cited in *Harper* as support for this broad statement— § 62–1–5 and W. Va. R.Crim. P. 5(a)—both speak in terms of "unnecessary delay."

This Court has never had occasion to establish a time limit beyond which a detention unaccompanied by a judicial finding of probable cause will be deemed presumptively unconstitutional. The United States Supreme Court did undertake such a task in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), where it attempted to clarify what it meant in *Gerstein* by requiring a "prompt" judicial determination of probable cause following arrest.

The Court in *McLaughlin* held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 56, 111 S.Ct. at 1670. The Court emphasized, however, that this 48-hour rule is not absolute:

This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate *Gerstein* if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, *handling late-night bookings where no magistrate is readily available*, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends.

---

**10.** This is not to suggest that other due process rights, as well as constitutional protections such as the right to release without excessive bail under W. Va. Const. art. III, § 5, and the right to a speedy trial under W. Va. Const. art. III, §.14, do not quickly become relevant shortly following arrest—they obviously do. However, as compared to the right of persons to be free from unreasonable seizure, none of these rights relies as heavily upon the necessity of immediate judicial oversight for their proper vindication.

500 U.S. at 56–57, 111 S.Ct. at 1670 (emphasis added).

Under *McLaughlin,* therefore, it is not impermissible under the federal constitution for an arrestee to be detained overnight pending the availability of a magistrate. This Court has customarily interpreted Article III, § 6 of the West Virginia Constitution in harmony with federal case law construing the Fourth Amendment. *See State v. Jones,* 193 W.Va. 378, 382 n. 6, 456 S.E.2d 459, 463 n. 6 (1995); *State v. Duvernoy,* 156 W.Va. 578, 582, 195 S.E.2d 631, 634 (1973). Rogers, however, urges that we go further, and interpret our state constitution to impose a more stringent time requirement than that set forth in *McLaughlin*—one that would render Rule 1(b)(1) unconstitutional.

In his dissent to *McLaughlin,* Justice Scalia stated that "[a]ny determinant of 'reasonable promptness' that is within the control of the State (as the availability of a magistrate, the personnel and facilities for completing administrative procedures incident to arrest, and the timing of 'combined procedures' all are) must be restricted by some outer time limit, or else the promptness guarantee would be worthless." *McLaughlin,* 500 U.S. at 66–70, 111 S.Ct. at 1675–77 (Scalia, J. dissenting). After reviewing the position taken by various courts and commentators as to the period of time reasonably necessary to effect an initial appearance, Justice Scalia took the position that the Fourth Amendment permits, at most, a 24–hour delay between a warrantless arrest and a *Gerstein* hearing.[11] *Id.* at 68–70, 111 S.Ct. at 1676–77. This 24–hour period of presumptive reasonableness has been adopted by other courts. *See, e.g., Jenkins v. Chief Justice of Dist. Court Dept.,* 416 Mass. 221, 619 N.E.2d 324 (1993) (holding that for purposes of determining probable cause after warrantless arrest, no more than 24–hour time period is needed between arrest and magistrate's determination of probable cause); *People ex rel. Maxian v. Brown,* 164 A.D.2d 56, 561 N.Y.S.2d 418 (1990), *aff'd,* 77 N.Y.2d 422, 568 N.Y.S.2d 575, 570 N.E.2d 223 (1991) (applying 24–hour standard under statute requiring

presentment without "unreasonable delay"); *see generally* Wendy L. Brandes, *Post–Arrest Detention and the Fourth Amendment: Refining the Standard of Gerstein v. Pugh,* 22 Colum. J.L. & Soc. Probs. 445 (1989) (advocating a national 24–hour rule).

Significantly, the Court has not been directed to any jurisdiction that requires round-the-clock availability of magistrates for the purpose of conducting probable cause determinations in criminal cases. And our research shows that in those rare instances where courts have been faced with such claims, they have been rejected. *See Creamer v. Raffety,* 145 Ariz. 34, 44, 699 P.2d 908, 918 (Ariz.Ct.App.1984) ("There is no requirement that the person arrested be taken immediately before a magistrate, nor for the magistrate to be available 24 hours a day for the initial appearance.") (citation omitted); *Williams v. United States,* 273 F.2d 781, 798 (9th Cir.1959), *cert. denied,* 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868 (1960) (rejecting "concept of 'round the clock' arraignments in order to comply with [Fed.R.Crim.P.] 5(a)").

■ The Court need not decide today whether our state constitution requires adherence to the 48–hour benchmark employed by the majority in *McLaughlin,* or the shorter period of 24 hours advocated by Justice Scalia and employed in a number of other jurisdictions, since Rule 1(b)(1) would easily pass constitutional muster under either standard. Rule 1(b)(1) of the Administrative Rules for the Magistrate Courts of West Virginia provides in all cases for the availability of a magistrate to conduct a probable cause determination within 24 hours after an individual has been arrested without a warrant, and is therefore constitutional under Article III, § 6 of the West Virginia Constitution. We also find that Rule 1(b)(1) in no way conflicts with W. Va.Code § 62–1–5 or W. Va. R.Crim. P. 5(a), both of which embody the constitutional safeguards set forth in Article III, § 6.

Even those who propose a time limit shorter than 24 hours for the commencement of a

---

11. Like the majority in *McLaughlin,* Justice Scalia proposed that such a time limit would act as a presumption, "when the 24 hours are exceeded the burden shifts to the police to adduce unforeseeable circumstances justifying additional delay." 500 U.S. at 70, 111 S.Ct. at 1677.

probable cause hearing, permit delay caused by the unavailability of magistrates during nighttime hours. For example, while the American Bar Association concluded that an initial appearance should ensue no more than six-hours following a warrantless arrest, it nevertheless indicated that such rule should be suspended during nighttime hours.[12] The commentary to the ABA's standard points out the inherent difficulties faced by this Court when it promulgated Rule 1(b):

> Making [judicial] officers available can pose difficult problems for sparsely populated jurisdictions. This standard attempts to guarantee the accused's right to a prompt presentment while simultaneously recognizing the practical impossibility of making judicial officers available twenty-four hours per day in every jurisdiction. The standard therefore does not require that judicial officers be made available during nighttime hours or that the six-hour rule apply in cases when it would require presentment during these hours. Some large, urban jurisdictions have experimented with night courts, and others should be encouraged to do so. But where night courts are not feasible, the police may hold an accused arrested at night without presentment until the following morning. Moreover, even if the accused is arrested during the day, the accused may be held until the next morning if the period of necessary delay extends until the magistrate is no longer available.

2 ABA Standards for Criminal Justice, Standard 10–4.1, commentary at 10–48 (2d ed. 1986 Supp.). As suggested by this commentary, Rule 1(a) of the Administrative Rules

for the Magistrate Courts of West Virginia gives the supervising circuit judge in more populous counties the discretion to require magistrates, on a rotating basis, to be physically present in magistrate court offices outside of normal office hours.

We agree with defendants' view that "[t]he on-call system [of Rule 1(b)(1) ] for the availability of magistrates during nighttime and weekend periods strikes a necessary and reasonable balance between the many demands placed upon the magistrate courts and the available personnel under the statutory scheme designed by the Legislature." Thirty-two of West Virginia's fifty-five counties have but two magistrates, while another twelve counties have only three such officers. Although the Court recognizes that the current scheme of magistrate availability obviously results in some persons having to spend several hours awaiting an initial presentment, we are also cognizant that to require magistrates to respond throughout the night to every warrantless arrest, in addition to the other mandatory responsibilities imposed upon on-call magistrates by Rule 1(b)(2), would likely place an unbearable strain on the magistrate court system.

The Court notes, however, that the ongoing implementation of technologies providing video conferencing[13] between jails and magistrate courts should reduce delays caused by the present need to transport arrested persons to the courthouse. In the context of the on-call system implemented through Rule 1(b)(1), such technology should help to reduce the time lag between when a magistrate is informed of a recent arrest, and the time

---

**12.** ABA Standard for Criminal Justice 10–4.1 provides:

> Unless the accused is released on citation or in some other lawful manner, the accused should be taken before a judicial officer without unnecessary delay. *Except during nighttime hours*, every accused should be presented no later than [six] hours after arrest. Judicial officers should be readily available to conduct first appearances within the time limits established by this standard. Under no circumstances should the accused's first appearance be delayed in order to conduct in-custody interrogation or other in-custody investigation. An accused who is not promptly presented shall be entitled to immediate release.

2 ABA Standards for Criminal Justice, Standard 10–4.1, at 10–43 (2d ed. 1986 Supp.) (emphasis added).

**13.** West Virginia's court system is in the process of installing a digital communication networking technology known as Asynchronous Transfer Mode ("ATM"), which permits voice, data and video transmission at very high speeds. Initiated as pilot projects in 1998, the ATM technology has been used to conduct initial appearance proceedings between the selected courts and jails servicing those courts. Present plans call for this technology to be deployed throughout the state as funding becomes available.

when a resulting initial appearance can be conducted.

## IV.

## CONCLUSION

For the reasons stated, we answer the certified question in the affirmative, and hold that Rule 1(b) of the Administrative Rules for the Magistrate Courts of West Virginia comports with constitutional requirements.

Certified question answered.