**STATE of Tennessee, Appellee,**

**v.**

**Jimmy Dale WALKER, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 5, 1986.

Permission to Appeal Denied by Supreme Court March 9, 1987.

William B. Bruce, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Charles E. Bush, Asst. State Atty. Gen., Victor S. Johnson, III, Asst. Dist. Atty. Gen., Steve Dozier, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of first degree murder and larceny, and he entered a plea of guilty to burglary. He was sentenced to serve life on the murder conviction, nine years on the burglary conviction, and six years on the larceny conviction. The sentence for burglary was ordered to be served consecutively to the murder sentence and the larceny sentence was ordered to be served concurrently with the murder sentence.

The defendant says a statement he gave after being taken into custody should have been suppressed and says, also, a statement made by him to a deputy after he was incarcerated should have been suppressed; says a demonstration by the state's attorneys during oral argument constituted prejudicial error; and says the sentence for burglary should not have been run consecutively to the sentence for murder.

The judgment is affirmed.

The defendant does not question the sufficiency of the evidence in this case, which shows overwhelmingly that he broke into a house, and when the owner returned and surprised him therein, the defendant shot and killed him.

The defendant makes vigorous argument that his statement was inadmissible because he was arrested without probable cause, and such conduct so far tainted the process as to require suppression of the first statement. The defendant cites several United States Supreme Court cases on this issue, on which we see no need to remark because this argument is apparently based on a misconception of the facts surrounding the arrest.

The police were called to the scene of this crime within a short time after its commission. In the course of the investigation at the scene, several latent fingerprints were lifted. Several days later, an informant advised them that the defendant had told him he had killed a man during a burglary. The police checked their records and found an outstanding warrant on the defendant for an assault charge. Additionally, the police had fingerprint cards of the defendant, who has a lengthy record for violations of the law. Using these known prints, the police were able to match the fingerprints found at the scene of the crime with those of the defendant.

Upon this development, the defendant was arrested and informed he was being arrested for assault and battery, the charge on the outstanding warrant, and for murder. The arresting officer did not have a warrant with him at the time of the arrest.

An officer may make a lawful arrest without a warrant if a felony has been committed and the officer has probable cause to believe the accused committed the crime. T.C.A. § 40-7-103(3); *West v. State,* 221 Tenn. 178, 425 S.W.2d 602 (1968); *State v. Taylor,* 661 S.W.2d 695 (Tenn.Cr.App.1983).

The arrest of the defendant was lawful. The issue of the admissibility of the statement made by him after his arrest turns on whether he was properly advised of his rights under the *Miranda* rule and whether he knowingly and voluntarily waived these rights.

The trial judge conducted a hearing on this matter and found the defendant was advised of his rights and knowingly and voluntarily waived them. The evidence introduced at the suppression hearing supported the finding of the trial judge, and we may not reverse the finding unless the evidence preponderates against it. *State v. Turnbill,* 640 S.W.2d 40 (Tenn.Cr.App. 1982).

The defendant further relies on the Rules of Juvenile Procedure to say his confession was not admissible because the officer failed to comply therewith.

■ The failure to follow these rules will not exclude the introduction of a validly obtained confession in a trial in the criminal court. *Colyer v. State,* 577 S.W.2d 460 (Tenn.1979).

The introduction of a later statement made by the defendant while being held in custody is considerably more questionable.

During the course of removing the defendant from one level of cells to another, an officer asked him, "What's a young boy like you doing charged with murder? You've got your whole life ahead of you. What's a young boy like you doing mixed up with something like this?"

The officer testified the defendant responded that he was strung out on drugs at the time he broke into the house and that he killed the owner when he was caught in the house because the owner could identify him.

This is the only time the defendant had told the authorities precisely that he actually killed the victim in this case. In the previous statement he claimed an accomplice fired the fatal shots.

■ The state maintains this exchange was not an interrogation within the meaning of *Miranda.* We do not agree with this conclusion.

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court held the *Miranda* rule is applicable not only to questioning in a formal interrogation, but to any words or actions by the police that the officers should reasonably have known was likely to elicit an incriminating response.

We think the question asked by the officer would be likely to elicit a response from the defendant and that one could reasonably expect the response to be incriminating.

We disagree with the reasoning of the trial judge and of the state that under the Metro Charter custodial authorities at the detention center are not police officers to whom *Miranda* applies. The officer was in uniform, and the defendant was in his charge. Whatever the Metro Charter may provide, it is clear to us that the defendant would perceive he was in a custodial atmosphere and that police action was involved.

Generally, once *Miranda* warnings have been given, it is not necessary to again give the warnings at every subsequent interrogation. In this case, however, the evidence shows the warnings were given when the defendant was taken into custody in December. His statement to the officer at the jail was made in April of the following year. This lapse of time, in our view, would make any response to interrogation suspect if *Miranda* warnings were not given anew.

■ Although we are of the opinion this subsequent statement was obtained in violation of the fifth amendment, we find its admission to be harmless beyond a reasonable doubt. *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed. 1 (1972).

The properly admitted evidence includes the defendant's valid statement to officers implicating himself in the burglary during which the murder occurred. The fingerprints of the defendant, whose presence was not otherwise explained, show he was present at the scene of the crime. Two witnesses unconnected to law enforcement agencies testified the defendant said he had shot a man under circumstances similar to the facts in this case.

We are unable to determine whether there was also a violation of the defendant's sixth amendment right to counsel. The record does not show that the right had attached at the time of the jailhouse statement, in April, 1985, or that he had asked for counsel. The first indictment was returned on July 12, 1985, and the defendant appeared with counsel for arraignment on July 18. We are not cited to, nor do we find, any prior formal action that would activate the right to counsel and bar police-initiated questioning. *See Michigan v. Jackson,* — U.S. —, — and n. 9, 106 S.Ct. 1404, 1410 and n. 9 (1986); *State v. Webb,* 625 S.W.2d 259 (Tenn.1981).

Had such a violation occurred, we are of the opinion it was harmless in this case for the reasons already set out. *Milton v. Wainwright, supra.*

We find no error in the demonstration made by the state's attorneys during argument to the jury. The assistant district attorneys general, using the evidence introduced, were simulating their theory of how the shooting took place. The trial judge instructed the jury at the time that this was only a theory advanced by the state and was not evidence in the case. There is nothing in this record to show the conduct was improper or that it unfairly prejudiced the defendant.

We concur with the order of the trial judge that the punishment for the burglary conviction should run consecutively to the murder sentence. The defendant has had numerous problems in complying with the law as a juvenile, the offense he committed was one where harm to another was likely to occur, and he showed no hesitancy in taking human life. The record shows that the defendant, having disabled his victim with one shot, fired a second shot into the man's head to eliminate him as a witness. We think these reasons support the judgment and comport with the guidelines of *Gray v. State,* 538 S.W.2d 391 (1976).

O'BRIEN, J., and JAMES C. BEASLEY, Special Judge, concur.