WHATLEY, Judge.
The State of Florida challenges several trial court orders suppressing statements Francis A. DuPont made to police in connection with his charge for first-degree murder. On appeal, we review three rulings made by the trial court: police psychologically coerced DuPont to make involuntary statements; police violated DuPont’s Miranda[1] rights during his interrogation; and police violated DuPont’s due process rights by failing to record his interrogation. We affirm in part and reverse in part.
First, we conclude that DuPont’s statements were not the product of coercive police conduct. To establish that a statement is not voluntary, there must be a finding of coercive police conduct. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (a defendant’s perception of coercion, which is solely caused by his unique mental status, is not a factor). DuPont was given food, drink, and cigarettes. He was provided with sufficient opportunity to sleep. The atmosphere was conversational. No promises or threats were made to DuPont, and his questioning was not excessively lengthy.[2] See State v. Sawyer, 561 So.2d 278 (Fla. 2d DCA 1990). Based on the totality of the circumstances, we find that the police did not psychologically coerce DuPont into making involuntary statements. See State v. Chavis, 546 So.2d 1094 (Fla. 5th DCA 1989), cert. denied, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990).
Second, we conclude that some of the statements made by DuPont were obtained in violation of Miranda. On July 6, 1992, DuPont was asked to accompany detectives to the police station to answer questions. DuPont was read Miranda at approximately 10:00 p.m. At the motion to suppress hear *407 ing, DuPont stipulated to the sufficiency of these warnings.
DuPont was questioned for approximately two hours. Around midnight, DuPont became angry and said that he wanted to leave. At this point, Detective Jack Soule stood up and pointed to the door. Detective Soule told DuPont at least three times that he could leave if he wanted to leave. DuPont did not move or make any statements. After a brief pause, the conversation resumed. Miranda was not again read to DuPont. No inquiry or clarification was made regarding DuPont’s wish to leave. The interview concluded at 12:35 a.m.
Once a suspect indicates a desire to remain silent, questioning must cease. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Following an equivocal request to remain silent, police may only question a suspect to clarify the invocation of the right to remain silent. In State v. Wininger, 427 So.2d 1114 (Fla. 3d DCA 1983), the defendant volunteered to answer questions at the police station. When the police told Wininger that he was a suspect, he indicated that he wanted to go home. The police continued questioning Wininger. The Wininger court held that when the defendant said that he wanted to go home, police should have either clarified the defendant’s wishes or stopped the interview.
Similarly, DuPont voluntarily went to the police station for questioning. During questioning, DuPont indicated that he wanted to leave. After DuPont’s unequivocal request to end the interrogation, police erroneously failed to stop the interview for a significant period of time. See Mosley. If police were in doubt as to the meaning of DuPont’s request to leave, then further inquiry should have been limited to clarify DuPont’s wishes. See Wininger. The fact that DuPont answered questions after he asked to leave does not validate the failure of police to scrupulously honor his request. See Christopher v. State of Florida, 824 F.2d 836 (11th Cir.1987), cert. denied, Dugger v. Christopher, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988).
The state argues that detectives could properly initiate a conversation with DuPont when he did not leave. The state correctly asserts that, after initially invoking Miranda rights, a suspect may again waive those rights by initiating conversation with police. Durocher v. State, 596 So.2d 997 (Fla.1992). However, in the present case, DuPont did not initiate the conversation with police. When DuPont did not leave, the police again initiated the interview. Furthermore, Miranda warnings were not read to DuPont before the interview resumed as required by Mosley. See State v. Chavis, 546 So.2d 1094 (Fla. 5th DCA 1989). Consequently, any statement that DuPont made on July 6, after he indicated that he wanted to leave, was properly suppressed.
The next morning, DuPont voluntarily returned to the station at approximately 10:00 a.m. for a polygraph. Detective Jerry Davis, the polygraph operator, testified, “I reminded him that his Miranda rights still applied during the polygraph examination, as far as any statements he made to me could be used — given back to the detectives as, per se, to the waiver.” No additional Miranda warnings were given to DuPont.
At around 12:03 p.m., Detective Soule observed DuPont leaving the polygraph room. They spoke briefly in the breezeway of the police station and went back to the interview room, where Detective Gary Gibson joined them. The interview concluded at approximately 2:30 p.m. DuPont was not given Miranda warnings during this interview.
We find that Detective Davis’s statement to DuPont, that his Miranda rights still applied, was not a proper Miranda warning. Although DuPont went home after he invoked his right to remain silent, he should have been properly advised of his Miranda rights again before the polygraph exam. See United States v. Skinner, 667 F.2d 1306 (9th Cir.1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); Durocher; Perry v. State, 522 So.2d 817 (Fla. 1988); Keys v. State, 606 So.2d 669 (Fla. 1st DCA 1992).
The polygraph exam was conducted more than 12 hours after DuPont was first read Miranda. In addition, when DuPont attempted to invoke his right to remain silent, his request was not scrupulously honored nor clarified. Consequently, it was important that DuPont’s Miranda rights be explained *408 to him, including his right to remain silent, before the polygraph exam. Further, Miranda should have been explained to DuPont before the interview, which immediately followed the polygraph exam. We hold that any statements made by DuPont during the polygraph exam and the interview immediately following the polygraph exam were properly suppressed.
Third, the trial court found that the failure of police to record the interviews with DuPont violated his due process rights. We disagree. While the better practice would be to record interviews and confessions, police are not required to do so. State v. Williams, 386 So.2d 27 (Fla. 2d DCA 1980). Therefore, the failure of police to record DuPont’s statements did hot per se violate his due process rights.
Accordingly, based on Miranda violations, we affirm the suppression of DuPont’s statements to police on July 6, after he invoked his right to remain silent, and all statements that DuPont made to police on July 7 during the polygraph exam and the interview immediately following the polygraph exam. We reverse the suppression of DuPont’s remaining statements to police insofar as his statements were not involuntarily made as a result of police coercion. Finally, we reverse the trial court’s finding that the failure of police to record DuPont’s statements violated his due process rights.
CAMPBELL, A.C.J., and FRANK, J., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. DuPont did not testify at the hearing. However, he presented experts who testified as to what DuPont told them happened during the interviews. We note that experts may base their opinion on facts which are not necessarily admissible into evidence. Department of Corrections, State of Florida v, Williams, 549 So.2d 1071 (Fla. 5th DCA 1989). However, an expert may not be used as a conduit to introduce otherwise inadmissible hearsay evidence. 549 So.2d at 1072; Walker v. State, 353 So.2d 968 (Fla. 3d DCA 1978). DuPont’s statements to the experts were hearsay and were not otherwise admissible. Consequently, the experts should not have been allowed to testify regarding the substance of these statements.