582 S.E.2d 786

### STATE of West Virginia Plaintiff Below, Appellee,

v.

### Millard J. DeWEESE, Defendant Below, Appellant.

No. 30733.

Supreme Court of Appeals of West Virginia.

Submitted March 11, 2003.

Decided April 15, 2003.

Dissenting Opinion of Justice Maynard July 2, 2003.

---

Rodney C. Windom, Paul V. Morrison, II, Judith A. Isner, Harrisville, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Senior Assistant Attorney General, Charleston, for the Appellee.

DAVIS, Justice:

Millard J. DeWeese, appellant/defendant below (hereinafter referred to as "Mr. DeWeese"), appeals his felony-murder conviction decided by a jury in the Circuit Court of Ritchie County. The circuit court sentenced Mr. DeWeese to life imprisonment without mercy. Here, Mr. DeWeese assigns error to (1) the admission of statements he made prior to being presented to a magistrate, (2) the admission of statements made during the course of two polygraph examinations, and (3) the manner in which a hearing was held to investigate alleged juror misconduct.[1] After a careful review of the briefs and record, and having heard the oral arguments of the parties, we reverse the conviction and sentence, and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On the afternoon of August 30, 1999, Mr. DeWeese's stepdaughter, Josephine Spears, and her friend Crystal Trader, both approximately fifteen years old, went to the residence of the fifty year old victim in this case, Paul Rollins. The girls wanted to buy drugs. Mr. Rollins was at his home drinking beer with two companions when the girls arrived. One of Mr. Rollins' companions offered money to one of the girls if she would perform oral sex on him. The offer was declined. Crystal eventually purchased six green pills from Mr. Rollins.[2] After the pills were purchased, both girls proceeded to the DeWeese home where they later consumed wine and beer. After consuming the wine and beer, Crystal became ill and began vomiting.

Several people were at the DeWeese home when the girls returned. Among those present was Lee Lawrence, a former boyfriend of Crystal's. Also present was Crystal's brother, Robert Trader. After Crystal became ill, Mr. Lawrence and Mr. Trader were told that she had taken pills purchased from Mr. Rollins. The two young men were also told that Mr. Rollins had propositioned both girls for oral sex. Lee Lawrence and an unidentified person went to Mr. Rollins' home to confront him about the allegations.

Lee Lawrence and his companion found Mr. Rollins at home drinking beer with a guest, Mike Slater. A verbal dispute erupted between Lee Lawrence and Mr. Rollins. Lee Lawrence threatened to kill Mr. Rollins if Crystal died because of the pills. Mike Slater was apparently able to calm things down and suggested that everyone go to the DeWeese home to check on Crystal's condition.

Once the four men arrived at the DeWeese home they learned that Crystal's condition had improved. It appeared she would be fine. However, a dispute flared outside the DeWeese home between Mr. Rollins and Robert Trader. During the verbal confrontation, Robert Trader punched Mr. Rollins on the left side of his face. The blow rendered Mr. Rollins unconscious. No further physical attacks occurred. Mike Slater subsequently placed Mr. Rollins on his shoulder and carried him home.

When Mr. Slater arrived at Mr. Rollins' home, he placed Mr. Rollins on the front porch. Mr. Slater then returned to the DeWeese home where he stayed for approximately one hour. Mr. Slater then returned to check on Mr. Rollins, and found him lying on a couch in his living room. Mr. Rollins had no recollection of his encounter with Mr. Trader. In fact, Mr. Slater explained to Mr. Rollins that he had been hit and knocked unconscious. Mr. Slater observed that Mr. Rollins' eye was beginning to swell and he joked that Mr. Rollins would "have a real nice shiner tomorrow." Mr. Slater then left and went to the nearby home of another

---

1. Mr. DeWeese also argues that the cumulative effect of the assigned errors denied him a fair trial.

2. The record does not disclose what the green pills were.

friend, but returned briefly to check on Mr. Rollins.

Later, sometime between 2:00 a.m. and 2:30 a.m., Mr. DeWeese, Mr. Lawrence, and Mr. Trader went to Mr. Rollins' home. The three men broke into Mr. Rollins' home and found him sleeping in bed. They proceeded to beat him. During Mr. DeWeese's trial, the evidence was conflicting as to the extent to which each man actually beat Mr. Rollins.[3] The record is clear, however, in demonstrating that all three men did in fact assault Mr. Rollins. When the beating ended, all three men left the home.

After the three men left, Mr. Slater again returned to Mr. Rollins' home. During the trial, Mr. Slater testified that he found Mr. Rollins in a badly beaten condition. His face was swollen and he was having trouble breathing. Mr. Slater summoned emergency medical technicians (EMTs). When the EMTs arrived they examined Mr. Rollins and requested that he permit them to take him to a hospital. He refused. The EMTs left an ice pack for Mr. Rollins and then departed. Mr. Slater stayed with Mr. Rollins until sometime after daybreak. Mr. Slater testified that Mr. Rollins was alive when he left the home. At about 11:00 a.m., Mr. Slater was advised that Mr. Rollins was dead.[4]

Shortly after authorities learned of Mr. Rollins' death, arrest warrants were issued for Mr. DeWeese, Mr. Lawrence, and Mr. Trader. At 4:00 a.m., on September 2, 1999, Mr. DeWeese was arrested at his mother-in-law's home in Huntington. Mr. DeWeese was taken to the Cabell County jail pending transfer to Ritchie County. While at the Cabell County jail, Mr. DeWeese was given *Miranda* warnings. He subsequently gave a statement denying any involvement in Mr. Rollins' death. Mr. DeWeese was not taken before a magistrate while he was being held by Cabell County officials.

At 5:00 p.m. on September 2, a State Trooper picked up Mr. DeWeese and transported him to the State Police Detachment in Harrisville, Ritchie County. The Trooper arrived with Mr. DeWeese at about 8:00 p.m. Mr. DeWeese was interrogated upon his arrival in Harrisville. He gave a statement implicating his involvement in the beating of Mr. Rollins. The statement, which was recorded, was concluded at 9:30 p.m. At about 10:45 a.m. the next morning, Mr. DeWeese was presented for the very first time to a magistrate. He remained in custody and, on September 9, 1999, he submitted to two consecutive polygraph examinations. During the examinations, he gave additional incriminating statements about his role in the beating of Mr. Rollins.[5]

Mr. DeWeese ultimately was indicted by a grand jury for the murder of Mr. Rollins. He was tried before a jury in August, 2000. A mistrial was declared when the jury was unable to reach a verdict. A second trial began on March 26, 2001. On April 3, 2001, the jury returned a verdict of felony-murder, without mercy.[6] Mr. DeWeese filed a motion for a new trial. His motion was denied. He was subsequently sentenced to life imprisonment without possibility of parole. From these rulings, Mr. DeWeese now appeals.

## II.

## STANDARD OF REVIEW

Mr. DeWeese's appeal is from the circuit court's order denying his motion for a new trial. Our general standard for reviewing such a case has been stated as follows:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit

---

**3.** There was evidence that a golf club and fan were used against Mr. Rollins during the attack.

**4.** A subsequent medical examination revealed that Mr. Rollins had numerous injuries, including multiple skull fractures and fourteen fractured ribs. It was the medical examiner's opinion that Mr. Rollins died of multiple blunt force traumatic injuries. The most serious injuries were the skull injuries.

**5.** *See* Section III. B., *infra,* for additional details about these examinations.

**6.** The felony-murder verdict was based upon the jury's finding that the murder occurred during the course of a burglary.

court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). *See also, State v. Crouch*, 191 W.Va. 272, 275, 445 S.E.2d 213, 216 (1994) ("The question of whether a new trial should be granted is within the discretion of the trial court and is reviewable only in the case of abuse." (citation omitted)).

The dispositive issues raised in Mr. DeWeese's appeal concern the trial court's denial of his pretrial motion to suppress statements given while in custody. In Syllabus point 1 of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), we set out the standard of review of a circuit court's ruling on a motion to suppress:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

It has also been held by this Court that "we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action." *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995).

## III.

## DISCUSSION

### A. Prompt Presentment

The first issue presented by Mr. DeWeese concerns the incriminating statements he made prior to being taken to a magistrate. Mr. DeWeese asserts these statements should have been suppressed as they were obtained in violation of the prompt presentment rule.

Our prompt presentment rule is contained in W. Va.Code § 62–1–5(a)(1) (1997) (Repl. Vol.2000) and provides in relevant part:

An officer making an arrest under a warrant issued upon a complaint . . ., shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

*See also*, W. Va. R.Crim. P. 5(a) ("An officer making an arrest under a warrant issued upon a complaint . . . shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made."). In Syllabus point 1 of *State v. Guthrie*, we held that " '[t]he delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' " 173 W.Va. 290, 315 S.E.2d 397 (1984) (quoting Syl. pt. 6, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982)).

The record in the instant case is quite clear. Mr. DeWeese was not taken to a magistrate in Cabell County when the initial arrest occurred.[7] The record also reveals that when Mr. DeWeese was taken to Ritchie County he was held in jail for approximately fifteen hours before being presented to a magistrate. During his pre-presentment confinement in Ritchie County, Mr. DeWeese gave incriminating statements that he now contends should have been suppressed. We believe the facts support Mr. DeWeese's contention.[8]

The facts clearly establish that the reason Mr. DeWeese was not promptly taken to a

7. Although the prompt presentment rule was violated initially in Cabell County, our concern is with the violation of the rule in Ritchie County. That is where the incriminating statements occurred.

8. To be clear, merely detaining a defendant in jail under an arrest warrant for fifteen hours

before taking him/her to a magistrate will not trigger a sanctionable violation of the prompt presentment rule. A sanctionable violation occurs if the purpose for detaining the defendant is to conduct an interrogation to obtain an incriminating statement from the defendant about his or her involvement in the crime for which he or she

magistrate in Ritchie County was that because law enforcement officials wanted to obtain a statement from him. During the course of cross-examination of the lead investigating officer in the case, Trooper M. Adams, the officer testified that he delayed taking Mr. DeWeese to a magistrate because he wanted to obtain a statement from him.[9] Trooper Adams testified as follows:

> Q. And the truth is that your primary concern was getting a statement from him; wasn't it, Trooper?
>
> A. Absolutely. I wanted to speak to Mr. DeWeese. Absolutely.
>
> . . . .
>
> Q. Did you honestly care whether [Cabell County officers] presented him to a magistrate as required by law?
>
> A. No, sir.

In spite of the explicit evidence showing that the prompt presentment rule was violated, the State has argued that the circuit court's ruling was correct. The State submits that Mr. DeWeese was advised of his *Miranda* rights several times during the course of the thirty hour period prior to his arraignment. Therefore, the statement was voluntary and admissible. Furthermore, the State notes that the statement itself was not admitted into evidence. There was only testimony regarding some of its contents. We will take up each argument separately.

1. **Miranda warnings.** Under the argument raised by the State, so long as the police read *Miranda* warnings to a suspect they may indefinitely withhold the suspect from a magistrate in hopes of obtaining a "voluntary" statement. We summarily reject this argument, as it would completely abolish the very essence of the prompt presentment rule.

■ The prompt presentment rule is not nullified merely because the police read *Miranda* warnings to a suspect who is under arrest.[10] The sole purpose of the prompt presentment rule "is to bring a *detached judicial officer* into the process once an arrest ha[s] been made to furnish meaningful protection for a defendant's constitutional rights." *State v. Ellsworth,* 175 W.Va. 64, 69, 331 S.E.2d 503, 507–08 (1985) (emphasis added). *See also State v. Grubbs,* 178 W.Va. 811, 814, 364 S.E.2d 824, 827 (1987) (The prompt presentment rule "requires an individual to be promptly taken before a neutral magistrate after arrest. This is to insure that the accused is fully informed of his various constitutional and statutory rights.").

2. **Introduction of only statement contents.** We are similarly unpersuaded by the State's contention that since only the contents of Mr. DeWeese's statement was introduced, and not the statement itself, no legal consequence should flow from the delay in presenting him to a magistrate.[11] Mr. DeW-

---

was arrested. *See State v. Milburn,* 204 W.Va. 203, 511 S.E.2d 828 (1998) (holding that delay in taking defendant to magistrate did not violate the prompt presentment rule because the delay was for the purpose of questioning the defendant about a crime for which he was not arrested).

9. During the suppression hearing Trooper Adams testified that when Mr. DeWeese was brought to Ritchie County, at approximately 8:00 p.m., there was no magistrate available for arraignment purposes. However, that testimony was contradicted by magistrate Teresa Harper. She was on-call and actually in her office when Mr. DeWeese was brought to Ritchie County. During the trial, magistrate Harper testified that, based upon her log entry, she was in her office until 10:00 p.m. The magistrate also testified that when she went home she was available to return to her office for arraignment purposes if summoned.

10. We wish to make clear that our prior cases do permit delay in bringing a suspect before a magistrate when the suspect wishes to make a state-

ment. *See* Syl. pt. 3, *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986) ("The delay occasioned by reducing an oral confession to writing ordinarily does not count on the unreasonableness of the delay where a prompt presentment issue is involved."). However, our cases have never held that the police may purposefully delay taking a suspect before a magistrate in order to encourage the suspect to make a statement.

11. The contents referred to by the State involve testimony that a golf club was used during the beating of Mr. Rollins. The police learned that a golf club was used only because Mr. DeWeese informed them of this fact in the statement he gave prior to being taken to a magistrate. Mr. DeWeese has also pointed out that the prosecutor elicited testimony that he (Mr. DeWeese) gave a statement implicating himself in the attack on Mr. Rollins.

eese contends that the fruits of the poisonous tree doctrine precluded use of the contents of his statement. For the reasons discussed, we agree with Mr. DeWeese.

■ Under the fruits of the poisonous tree doctrine " '[e]vidence which is located by the police as a result of information and leads obtained from illegal[ ] [conduct], constitutes 'the fruit of the poisonous tree' and is ... inadmissible in evidence.' " *State v. Stone*, 165 W.Va. 266, 272, 268 S.E.2d 50, 54–55 (1980) (quoting *French v. State*, 198 So.2d 668 (Fla.Dist.Ct.App.1967)). We have observed, however, that "absent a constitutional violation, the 'fruits of the poisonous tree' doctrine has no applicability." *State v. Bradshaw*, 193 W.Va. 519, 540, 457 S.E.2d 456, 477 (1995).

■ The prompt presentment rule is not a constitutional doctrine. It is a legislatively created and judicially adopted rule.[12] *See Rogers v. Albert*, 208 W.Va. 473, 477, 541 S.E.2d 563, 567 (2000) (per curiam) ("[T]he right to prompt presentment is not constitutionally guaranteed outside the context of a warrantless arrest, but rather exists as a statutory and procedural right."). Although the prompt presentment rule is not adorned by the constitution, it is designed to protect the constitutional rights of an accused. In view of the significant purpose of the prompt presentment rule, we perceive no legally justifiable reason for not extending the fruits of the poisonous tree doctrine to preclude the use of evidence derived directly from a statement that was obtained as a result of a violation of the prompt presentment rule.

■ If this Court did not extend the fruits of the poisonous tree doctrine to a violation of the prompt presentment rule, then prosecutors could get around the legal consequences of obtaining a statement in violation of the rule by introducing testimony only of matters learned from the *contents* of the statement instead of the actual statement itself. Such conduct is impermissible. Therefore, "in light of [the] extreme significance of our prompt presentment statute to the administration of criminal justice in this state, and in view of the precious constitutional rights implicated when government officials are permitted to hold persons in custody for extended periods of time without the intervention of a neutral and detached judicial officer," *State v. Mason*, 162 W.Va. 297, 301, 249 S.E.2d 793, 796 (1978), we hold that when a statement is obtained from an accused in violation of the prompt presentment rule, neither the statement nor matters learned directly from the statement may be introduced against the accused at trial.

■ Based upon the foregoing, we find that the trial court committed error in not suppressing the pre-arraignment statement given by Mr. DeWeese, as well as evidence of all information learned directly from that statement.[13]

### B. Polygraph Statements

Mr. DeWeese next argues that the circuit court erred by not suppressing statements he made during two polygraph examinations.[14] In those statements, Mr. DeWeese admitted to hitting Mr. Rollins. The statements were introduced into evidence by the State. Mr. DeWeese contends that the statements should have been suppressed because he was not given *Miranda* warnings before the polygraph interrogations began.[15]

---

12. "At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975).

13. The State has not contended that the "independent source rule" is applicable to the facts of this case. *See* Syl. pt. 4, *State v. Aldridge*, 172 W.Va. 218, 304 S.E.2d 671 (1983) ("The exclusionary rule has no application when the State learns from an independent source about the evidence sought to be suppressed."). Therefore, we will not address the application of this rule.

14. At the conclusion of the first polygraph examination, Mr. DeWeese was informed that he did not responded truthfully. Consequently, a second test was administered shortly after the first test concluded.

15. As an alternative basis for excluding the statements, Mr. DeWeese contended that the statements were inadmissible under Rule 410 of the West Virginia Rules of Evidence and Rule 11(e)(6) of the West Virginia Rules of Criminal Procedure, because they were made during the course of plea negotiations. The trial court found that there was no evidence to support finding that the polygraph tests were taken in the

■ At the outset we note that no evidence was introduced to the jury that Mr. DeWeese took polygraph tests. We have long held that "[p]olygraph test results are not admissible in evidence in a criminal trial in this State." Syl. pt. 2, *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979). In addition, we have ruled that "[r]eference to an offer or refusal by a defendant to take a polygraph test is inadmissible in criminal trials to the same extent that polygraph results are inadmissible." Syl. pt. 2, *State v. Chambers*, 194 W.Va. 1, 459 S.E.2d 112 (1995). Although evidence of polygraph test results and reference to offering or refusing to take a polygraph test are prohibited from use in a criminal prosecution, "[t]he general rule . . . is that statements are not inadmissible merely because they were made during the course of a polygraph examination." *People v. Ray*, 431 Mich. 260, 430 N.W.2d 626, 628 (1988). That is, statements made by a defendant during the course of a properly administered and unobjectionable polygraph test may be used against the defendant at trial.

In the instant case, Mr. DeWeese contends that the polygraph tests he took were improperly administered because he was not given *Miranda* warnings prior to each test. This Court has never squarely addressed the issue of whether *Miranda* warnings are required before a polygraph test is administered. *See State v. Frazier*, 162 W.Va. 602, 620 n. 14, 252 S.E.2d 39, 49 n. 14 (1979) (observing in passing that *Miranda* "may apply to the defendant's taking a polygraph test."). We do so now.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that law enforcement officers must inform suspects of certain fundamental constitutional rights prior to initiating custodial interrogation. *Miranda* held that a suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one

will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. This Court has recognized that "[t]he special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation." Syl. pt. 8, in part, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999). Here, there is no dispute that Mr. DeWeese was in custody at the time of the polygraph examination.

■ All courts that have been squarely presented with the issue have held that *Miranda* warnings must be given to a suspect, who is in custody, prior to conducting a polygraph examination. *See Vasser v. Solem*, 763 F.2d 975, 977 (8th Cir.1985) (holding that "when a polygraph examination is administered to a suspect while under criminal investigation, full instructions of his rights should be furnished"); *People v. Gordon*, 84 Cal.App.3d 913, 149 Cal.Rptr. 91, 97 (1978) (holding that where no *Miranda* warnings were given to defendant before his submission to polygraph test, statements were rendered inadmissible at trial); *People v. Algien*, 180 Colo. 1, 501 P.2d 468, 470 (1972) (suppressing confession after finding police failed to advise the "defendant of his Fifth Amendment rights as required by *Miranda*, before administering the polygraph examination"); *People v. Zimmer*, 68 Misc.2d 1067, 329 N.Y.S.2d 17, 25 (1972) (suppressing statements made during polygraph test because "[t]he defendant's rights against self-incrimination were not adequately protected"); *Commonwealth v. Bennett*, 439 Pa. 34, 264 A.2d 706, 708 (1970) ("We therefore rule that, under the circumstances, it was absolutely essential, before the questioning began during the polygraph test, that Bennett be given a full warning of his constitutional rights, and since he was not, the evidentiary use of any facts secured through such questioning or any subsequent questioning, tainted by the original illegality, was constitutionally proscribed."); *State v. Faller*, 88 S.D. 685, 227 N.W.2d 433, 436 (1975) (remanding the case for "the trial court to determine

context of plea negotiations. We need not address this alternative basis for challenging the

admission of the statements because the *Miranda* issue resolves the matter.

whether defendant was given his warnings before submitting to the polygraph examination and, if so, whether he understood such"). *See also, Wyrick v. Fields*, 459 U.S. 42, 44, 103 S.Ct. 394, 394, 74 L.Ed.2d 214 (1982) ("Prior to undergoing the polygraph examination, Fields was given a written consent document, which he signed, informing him of his rights, as required by *Miranda*[.]"). As a result of the foregoing authorities, we have little hesitancy in holding that *Miranda* warnings must be given to a criminal suspect, who is in custody, prior to conducting a polygraph examination.[16]

There is no dispute. Mr. DeWeese was not given *Miranda* warnings immediately prior to taking the polygraph tests. The State contends, and the trial court found, that failure to provide *Miranda* warnings was not fatal because Mr. DeWeese's counsel was present in the building when the tests were administered, defense counsel expressly waived the right to have *Miranda* warnings given, and *Miranda* warnings had previously been given to Mr. DeWeese by the police. Based upon the trial courts three findings, we will take up each issue separately.

**1. Presence of counsel during polygraph interrogation.** The trial court found that the presence of defense counsel in the building where the polygraph tests were administered obviated the need for giving *Miranda* warnings. We disagree.

One of the rights afforded by *Miranda* is the right to have counsel present during an interrogation. Likewise, *Miranda does not* stand for the proposition that a warning regarding the privilege against self-incrimination is not required when counsel is present at an interrogation.[17] In fact, *Miranda* explained the critical need for giving the warning as follows:

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.
>
> . . . .
>
> ... [T]his warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead.

*Miranda*, 384 U.S. at 469–472, 86 S.Ct. at 1625–1626.

 Under *Miranda*, the mere presence of defense counsel at an interrogation does not negate the necessity for providing the warning against self-incrimination. This warning, as required by the *Miranda* decision, is an absolute prerequisite to interrogation. Indeed, we have found no decision wherein a court has ruled that a defendant forfeits his/her right to be informed of the privilege against self-incrimination merely because he/she has exercised the right to have counsel present at an interrogation. " 'In these circumstances, we find it intolerable that one constitutional right should have

16. We wish to make clear that our decision today addresses only the issue of providing *Miranda* warnings to a defendant, *who is in custody*, prior to performing a polygraph test. *See People v. Ochoa*, 19 Cal.4th 353, 79 Cal.Rptr.2d 408, 437, 966 P.2d 442 (1999) (same); *State v. Pinder*, 250 Conn. 385, 736 A.2d 857, 872 (1999) (same); *State v. Demuynck*, 779 So.2d 342, 343 (Fla.Dist. Ct.App.2000) (same); *Davies v. State*, 730 N.E.2d 726, 734 (Ind.App.Ct.2000) (holding that *Miranda* warnings are not required prior to giving a polygraph test when a defendant is not in custody); *Gomes v. State*, 9 S.W.3d 373, 379 (Tex.Ct. App.2000) (same).

17. During oral argument Mr. DeWeese's counsel pointed out that, although he was present in the building where the polygraph tests were given, the police would not permit him to be present in the room while the tests were administered. Insofar as this issue was not made an assignment of error, we are constrained from addressing the merits of the matter. However, we will point out that, with the exception of a grand jury proceeding, a criminal defendant has a right to have counsel present in the room where an interrogation is taking place.

to be surrendered [because of the] assert[ion of] another.' " *State ex rel. Farley v. Kramer,* 153 W.Va. 159, 186, 169 S.E.2d 106, 121 (1969) (*quoting Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). *See State v. Phillips,* 75 Ohio App.3d 785, 600 N.E.2d 825, 827 (1991) ("Phillips and his attorney voluntarily went to the police station after the drive-by shooting occurred. Detective Zimmerman gave Phillips the warnings required by *Miranda,* and then talked to Phillips in his counsel's presence."). As one court appropriately observed, the government "may not nullify the protection Miranda affords a defendant by using trickery to extract incriminating statements from him that otherwise could not be obtained without first giving him the required warnings." *United States v. Hayles,* 471 F.2d 788, 791 (5th Cir.1973). Thus, we hold that prior to giving a polygraph examination, the police must inform the defendant of his *Miranda* rights even though defense counsel is present in the room with the defendant when a polygraph examination is about to be given. To the extent that the trial court found that defense counsel's presence obviated the need for giving *Miranda* warnings to Mr. DeWeese, this finding was erroneous.

**2. Waiver of Miranda warnings.** As previously noted, the trial court also concluded that defense counsel expressly waived the right to have *Miranda* warnings given. While not absolutely clear, the record does suggest that defense counsel was asked whether reading Miranda warnings were necessary. Defense counsel indicated the warnings did not have to be given.[18] Assuming that this scenario did in fact occur, it does not help the State.

Our cases have recognized that the rights articulated in the *Miranda* warnings may be waived. In Syllabus point 2 of *State v. Bragg,* 160 W.Va. 455, 235 S.E.2d 466 (1977) we held that "[a] defendant may waive his constitutional rights, as enunciated in *Miranda,* provided the waiver is made voluntarily, knowingly and intelligently." In every

decision rendered by this Court finding a valid waiver of *Miranda* rights, the facts revealed that *Miranda* warnings were given *before* the rights enunciated therein were waived. *See e.g., State v. Ivey,* 196 W.Va. 571, 577, 474 S.E.2d 501, 507 (1996) (finding waiver after *Miranda* warnings given); *State v. Moore,* 193 W.Va. 642, 648, 457 S.E.2d 801, 807 (1995) (same); *State v. Sugg,* 193 W.Va. 388, 399, 456 S.E.2d 469, 480 (1995) (same); *State v. Parsons,* 181 W.Va. 131, 135, 381 S.E.2d 246, 250 (1989) (same); *State v. McDonough,* 178 W.Va. 1, 4, 357 S.E.2d 34, 37 (1987) (same); *State v. Hambrick,* 177 W.Va. 26, 29, 350 S.E.2d 537, 540 (1986) (same); *State v. Wimer,* 168 W.Va. 417, 422, 284 S.E.2d 890, 893 (1981) (same).

This Court has never held that the actual reading of *Miranda* warnings may be waived. In addition, after an exhaustive search, we have found no other court that has ruled that a defendant may waive the actual reading of *Miranda* warnings. The reason no court has so held, is found in the *Miranda* decision, wherein the opinion held:

> *Prior to any questioning the person must be warned* that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right of the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

*Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612. (Emphasis added.) *Miranda* recognizes a waiver only of rights to which a defendant has been informed. *See* Syl. pt. 7, in part, *State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971) ("A statement freely and voluntarily made by an accused while in custody or deprived of his freedom by the authorities and subjected to questioning is admissible in evidence against him if it clearly appears that such statement was freely and voluntarily made *after the accused had been advised of his constitutional right[s]* ... [and] after he has been so advised, he know-

---

**18.** Mr. DeWeese's appeal brief does not concede that trial counsel stated that *Miranda* warnings

need not be given.

ingly and intelligently waives such rights." (Emphasis added)).

▇ To permit the police to ask a defendant if he/she wants to be informed of the rights articulated in *Miranda* would defeat the very purpose of *Miranda* warnings. The essence of those warnings is to accurately and fully inform a defendant of his/her fundamental constitutional rights. Nothing but mischief would flow from a rule that would permit a defendant to waive the right to be informed of the rights embodied in the *Miranda* warnings. Consequently, we hold that while a defendant may waive the rights articulated under the *Miranda* warnings, a defendant cannot, as a matter of law, waive the reading of the *Miranda* warnings. To the extent that the trial court found that defense counsel waived Mr. DeWeese's right to have *Miranda* warnings given to him, this finding was error. The right to have *Miranda* warnings given simply cannot be waived.

**3. Effect of prior Miranda warnings.** Lastly, the trial court found that Mr. DeWeese did not have to be given *Miranda* warnings before the polygraph examinations took place because he had previously been given *Miranda* warnings. The issue of the renewal of *Miranda* warnings presents a matter of first impression for this Court.

▇ "There is no requirement that an accused be continually reminded of his rights once he has intelligently waived them[,]" *Biddy v. Diamond*, 516 F.2d 118, 122 (5th Cir. 1975). Nevertheless, "*Miranda* warnings, once given, are not to be accorded unlimited efficacy or perpetuity." *United States v. Hopkins*, 433 F.2d 1041, 1045 (5th Cir.1970). That is, "[a] criminal suspect who knowingly and voluntarily waives his Miranda rights need not be re-advised of those rights during subsequent interrogations, so long as the initial waiver retains its efficacy." *Yung v. State*, 906 P.2d 1028, 1033 (Wyo.1995).

A review of decisions addressing the issue of renewed *Miranda* warnings reveals that there is no generally recognized fixed time period in which warnings must be renewed. For example, in *State v. DuPont*, 659 So.2d 405 (Fla.Dist.Ct.App.1995), the defendant was arrested and charged with first-degree murder. Prior to his arrest, the defendant voluntarily went to police headquarters for a polygraph examination. The defendant made self-incriminating statements during the examination. After his arrest and prior to trial, the defendant filed a motion to suppress the statements made during the polygraph test, asserting that he was not given *Miranda* warnings immediately prior to the test. The trial court agreed that *Miranda* warnings were required and therefore suppressed the statements. The State appealed the suppression order. One issue raised by the State in the appeal was that the defendant had been given *Miranda* warnings twelve hours prior to taking the polygraph test. The State also argued that the polygraph examiner informed the defendant that his *Miranda* rights still applied. The appellate court rejected the State's arguments and affirmed the trial court's ruling suppressing the polygraph statements. In so doing, the appellate court held that:

> We find that [the examiner's] statement to [the defendant], that his *Miranda* rights still applied, was not a proper *Miranda* warning.... [The defendant] should have been properly advised of his Miranda rights again before the polygraph exam.
>
> The polygraph exam was conducted more than 12 hours after [the defendant] was first read *Miranda*.... Consequently, it was important that [the defendant's] *Miranda* rights be explained to him, including his right to remain silent, before the polygraph exam.

*DuPont*, 659 So.2d at 407–408. *See also Ex parte J.D.H.*, 797 So.2d 1130 (Ala.2001) (lapse of 16 days required renewal of *Miranda* warnings); *Commonwealth v. Doe*, 37 Mass. App.Ct. 30, 636 N.E.2d 308 (1994) (lapse of 2 days required renewal of *Miranda* warnings); *Commonwealth v. Coplin*, 34 Mass. App.Ct. 478, 612 N.E.2d 1188 (1993) (lapse of thirty to forty-five minutes required renewal of *Miranda* warnings); *Commonwealth v. Wideman*, 460 Pa. 699, 334 A.2d 594 (1975) (lapse of twelve hours required renewal of *Miranda* warnings); *State v. Walker*, 729 S.W.2d 272 (Tenn.Crim.App.1986) (lapse of four months required renewal of *Miranda* warnings).

While the court in *DuPont* found that renewed *Miranda* warnings were required after a lapse of twelve hours, the court in *Biddy v. Diamond*, 516 F.2d 118, held that renewed *Miranda* warnings were not required after a lapse of 14 days.

In *Biddy* the defendant was convicted of manslaughter by a Mississippi jury. After exhausting direct appeals, the defendant in *Biddy* filed a federal habeas corpus petition. One of the issues raised in the petition was that the police failed to read *Miranda* warnings to the defendant during an interrogation in which she gave incriminating statements. The federal district court denied relief. The defendant appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit held that *Miranda* warnings were not necessary because the police had informed the defendant of the warnings 14 days prior to obtaining the incriminating statements. The opinion in the case stated that "a further delineation ... of petitioner's rights, which she had stated that she understood from prior explanations, would have been needlessly repetitious." *Biddy*, 516 F.2d at 122. *See also United States v. Andaverde*, 64 F.3d 1305 (9th Cir.1995) (lapse of one day did not require renewed *Miranda* warnings); *United States ex rel. Henne v. Fike*, 563 F.2d 809 (7th Cir.1977) (lapse of nine hours did not require a renewed *Miranda* warnings); *Puplampu v. United States*, 422 F.2d 870 (9th Cir.1970) (lapse of two days did not require renewed *Miranda* warnings); *Maguire v. United States*, 396 F.2d 327 (9th Cir.1968) (lapse of three days did not require renewed *Miranda* warnings); *Fagan v. State*, 412 So.2d 1282 (Ala.Crim.App.1982) (lapse of three-and-one-half hours did not require renewed *Miranda* warnings); *Commonwealth v. Silanskas*, 433 Mass. 678, 746 N.E.2d 445 (2001) (lapse of two hours did not require renewed *Miranda* warnings); *Koger v. State*, 117 Nev. 138, 17 P.3d 428 (2001) (lapse of 12 days did not require renewed *Miranda* warnings).

The decisions in *DuPont* and *Biddy* illustrate the lack of consensus regarding when renewed *Miranda* warnings must be given. To help resolve this unsettled area of the law, some courts have adopted the following test:

> In determining whether *Miranda* warnings became so stale as to dilute their effectiveness because of a significant lapse in the process of interrogation, the following totality-of-the-circumstances criteria should be considered: (1) the length of time between the giving of the first warnings and subsequent interrogation, (2) whether the warnings and the subsequent interrogation were given in the same or different places, (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, (4) the extent to which the subsequent statement differed from any previous statements, and (5) the apparent intellectual and emotional state of the suspect.

*See also People v. Delgado*, 832 P.2d 971, 973 (Colo.Ct.App.1991); *See also DeJesus v. State*, 655 A.2d 1180, 1195 (Del.1995); *State v. Lester*, 126 Ohio App.3d 1, 709 N.E.2d 853, 856 (1998); *State v. Birmingham*, 527 A.2d 759, 761–762 (Me.1987); *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1276 (1989). Courts have also concluded that "the most relevant factor in analyzing whether a former *Miranda* admonition has diminished is the amount of time elapsed between the first reading and the subsequent interview." *Koger v. State*, 117 Nev. 138, 17 P.3d 428, 431 (2001).

We believe the above test provides sound guidance for the courts of this State. Accordingly, we hold that in determining whether the initial *Miranda* warnings become so stale as to dilute their effectiveness so that renewed warnings should have been given due to a lapse in the process of interrogation, the following totality-of-the-circumstances criteria should be considered: (1) the length of time between the giving of the first warnings and subsequent interrogation; (2) whether the warnings and the subsequent interrogation were given in the same or different places; (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers; (4) the extent to which the subsequent statement differed from any previous statements; and

(5) the apparent intellectual and emotional state of the suspect.

For resolution of the issue in this case, the first criterion it is dispositive as a matter of public policy in West Virginia. When Mr. DeWeese was arrested on September 2, 1999, by Cabell County officials, he was given *Miranda* warnings. Mr. DeWeese waived the rights he was informed of and gave a statement denying any involvement with the death of Mr. Rollins. Several hours later, on the same day, Mr. DeWeese was picked up by a State Trooper and taken to Ritchie County. When Mr. DeWeese was picked up he was again given *Miranda* warnings. The record fails to disclose whether Mr. DeWeese waived his rights after the warnings were given a second time. Once Mr. DeWeese arrived at the State Police detachment in Ritchie County, he was again given *Miranda* warnings. Mr. DeWeese thereafter waived his rights and gave an incriminating statement.[19]

Mr. DeWeese was not again interrogated by the police until September 9, when the polygraph tests were administered. Thus, roughly seven days had lapsed since the last time Mr. DeWeese was given *Miranda* warnings. We find that the police were required to read Mr. DeWeese the *Miranda* warnings before the polygraph tests were given. As a matter of public policy in West Virginia, a lapse of seven days between an initial waiver of the rights enunciated in the *Miranda* warnings and a subsequent interrogation requires renewed warnings before the subsequent interrogation may occur. Consequently, the circuit court committed error in finding that renewed *Miranda* warnings

were not necessary because prior warnings had been given.

Based upon the foregoing analysis, we conclude that the circuit court erred in each of the three bases for its ruling that *Miranda* warnings were not required before the polygraph tests were given. Consequently, the statements made by Mr. DeWeese during the polygraph examinations should have been suppressed.

### C. Harmless Error

■ Finally, the State contends that any error in admitting Mr. DeWeese's pre-arraignment statements and his polygraph statements constituted harmless error. We disagree. We have long held that "[e]rrors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. pt. 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). *See also* W. Va. R.Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Further, "[f]ailure to observe a constitutional right constitutes a reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).[20]

■ Here, the *Miranda* violation resulted in the polygraph examiner taking the stand and informing the jury that Mr. DeWeese admitted to beating Mr. Rollins. During direct examination of the polygraph examiner by the State, the following exchange occurred.

---

**19.** We presume that Mr. DeWeese was also informed of his rights when he was taken before a magistrate for arraignment.

**20.** We have previously pointed out that the prompt presentment rule is not constitutionally based. Therefore, harmless error analysis for the violation of the rule in this case would be governed by a different standard. *See* Syl. pt. 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979) ("Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determi-

nation made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury."). Because we find that admission of the statements obtained in violation of *Miranda* was not harmless beyond a reasonable doubt, we need not perform an independent analysis to determine whether the prompt present rule violation was harmless error.

Q. Did you ask Mr. DeWeese if he had participated in that homicide?

A. Yes, I did.

Q. And what, if anything, did he indicate to you had been his participation in that?

A. He explained to me that he had hit Mr. Rollins approximately 20 times. That he had kicked him several times and that he hit him with a box fan.

Q. Did he indicate where all he had hit and kicked Mr. Rollins?

A. He indicated that he was standing on the bed with his hands against the wall for support, kicked him several times. He stated that he had hit him about the head and face. I am not saying he did it 20 times, but he indicated he hit him and that was one of the areas.

The polygraph examiner was a State Police sergeant. The examiner's position as a law enforcement officer undoubtedly provided a heightened sense of veracity as to the truth of the matters asserted by the examiner. As Mr. DeWeese's brief aptly illustrates, this testimony was not coming from "a co-defendant or some other unsavory character[.]" Further, because the statements proffered against Mr. DeWeese were given in the context of polygraph examinations, defense counsel could not effectively challenge the veracity of the statements without alerting the jury that the polygraph examinations had occurred.[21] Even though the State presented testimony from the co-defendants that implicated Mr. DeWeese,[22] we simply cannot conclude that the incriminating statements provided to the jury by the polygraph examiner were harmless beyond a reasonable doubt.[23]

## IV.

## CONCLUSION

We find that the trial court committed error in not suppressing statements made by Mr. DeWeese prior to his arraignment before a magistrate and during the polygraph examinations. Consequently, we reverse Mr. DeWeese's conviction and sentence. We remand this case for a new trial consistent with the rulings herein.

Reversed and Remanded.

Justice MAYNARD dissents and files a dissenting opinion.

(Filed July 2, 2003)

MAYNARD, Justice, dissenting.

I believe the majority has confused two separate legal doctrines and gone too far by extending the fruits of the poisonous tree doctrine to physical evidence discovered as a result of a statement obtained in violation of the prompt presentment rule. The fruits of the poisonous tree doctrine was first announced by the United States Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.E.2d 441 (1963). In *Wong Sun*, the defendant's fourth amendment rights were violated when the police arrested him in his home without probable cause or reasonable grounds to do so. In making the arrest, the police found narcotics. The Supreme Court held that the narcotics which were derived from the illegal arrest must be excluded from the defendant's trial as "fruits of the poisonous tree." 371 U.S. at 488, 83 S.Ct. at 417, 9 L.E.2d at 455.

This Court explained in *State v. Bradshaw*, 193 W.Va. 519, 540, 457 S.E.2d 456, 477 (1995), that "absent a constitutional violation, the 'fruits of the poisonous tree' doctrine has no applicability." In the case *sub judice*, there was no constitutional violation. At most, there was violation of the prompt presentment rule which is clearly not constitutionally based.

21. Mr. DeWeese argued before the trial court and in this Court, that the incriminating polygraph statements were made during approximately seven to nine hours of grueling repetitious questioning.

22. Mr. Trader entered a plea agreement that resulted in a sentence of three to fifteen years for voluntary manslaughter. Mr. Lawrence was convicted of second degree murder and received a sentence of thirty years.

23. Because we are reversing this case we need not address the remaining assignments of error.

The right of prompt presentment is derived from W.Va.Code § 62–1–5(a)(1) (1997) which provides that:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

Also, Rule 5(a) of the West Virginia Rules of Criminal Procedure mandates that "[a]n officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made." "Both § 62–1–5 and Rule 5(a) are analogues of Federal Rule of Criminal Procedure 5(a) [and] ... [t]he Supreme Court has made clear that neither Federal Rule 5(a) nor the exclusionary rules underpinning it are constitutionally required." *Rogers v. Albert,* 208 W.Va. 473, 477, 541 S.E.2d 563, 567 (2000), *citing Gallegos v. Nebraska,* 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86 (1951). Consequently, "the right to prompt presentment is not constitutionally guaranteed outside the context of a warrantless arrest, but rather exists as a statutory and procedural right." *Rogers,* 208 W.Va. at 477, 541 S.E.2d at 567.

In light of the above, I can find no basis for extending the fruits of the poisonous tree doctrine to physical evidence derived from a statement that was obtained as a result of a violation of the prompt presentment rule. Simply put, there was no constitutional violation with respect to the statement the defendant gave to the police in this case. Therefore, the majority should not have applied the fruits of the poisonous tree doctrine to a violation of the prompt presentment rule.

I also believe that the majority has gone too far by excluding evidence obtained during a polygraph examination simply because the defendant was not given the *Miranda* warnings immediately before the test was administered. Mind you, the defendant had already been given *Miranda* warnings four times before the polygraph, and his lawyer

was present! Apparently, for the majority, this is not good enough. The majority needlessly creates a bright-line rule requiring that *Miranda* warnings be given *immediately* before any polygraph examination. In my opinion, a consideration of the totality of the circumstances is all that is necessary to determine whether statements made by a criminal suspect during a polygraph examination were given freely and voluntarily.

In this case, as stated above, the defendant was given the *Miranda* warnings at least four times before he took the polygraph. While he was not given the *Miranda* warnings immediately before the polygraph examination, the record establishes that the defendant was fully aware of his rights and voluntarily agreed to take the test. In that regard, the record shows that the defendant's counsel was present and indicated to the police officer administering the test that it was not necessary to advise the defendant yet again of the *Miranda* warnings. Given these facts, I find no basis for suppressing the statements the defendant made during the polygraph examination.

The majority opinion needlessly creates additional hurdles for law enforcement officers in their efforts to protect law-abiding citizens from very dangerous criminals. The evidence in this case indicates that the defendant, along with two friends, beat the victim to death while he was lying in bed. There was testimony at trial that the defendant climbed onto the bed, straddled the victim, and punched him at least eight times. The jury properly convicted this violent defendant of first-degree murder without mercy. Now, thanks to the majority opinion, the State has to go back and try the defendant all over again.

Accordingly, for the reasons set forth above, I respectfully dissent.